In the
United States Court of Appeals
For the Seventh Circuit

Nos. 99-1215 & 99-1218

STEPHANIE BEKKER,

Plaintiff-Appellant,

v.

HUMANA HEALTH PLAN, INCORPORATED,

Defendant-Appellee.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
Nos. 97 C 4643 and 97 C 6771--David H. Coar, Judge.

Argued January 5, 2000--Decided September 27, 2000

Before POSNER, EASTERBROOK and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.  Dr. Stephanie Bekker
worked as a physician for Humana Health Plan,
Inc. ("Humana") until Humana discharged her
because it had received numerous reports that Dr.
Bekker had smelled of alcohol and had exhibited
other signs of alcohol use when seeing her
patients. After her discharge, Dr. Bekker filed
this action against Humana; she alleged that
Humana discriminated against her on account of
her perceived disability of alcoholism in
violation of the Americans with Disabilities Act
("ADA"), 42 U.S.C. sec. 12101 et seq. The
district court granted summary judgment for
Humana. For the reasons set forth in the
following opinion, we affirm the judgment of the
district court.

I
BACKGROUND
A.  Facts/1

Dr. Stephanie Bekker began practicing as an
internist at Humana's Lincoln Park Center in
1983./2 She worked weekdays and every other
Saturday. She also had on-call duty, which
required her to work 24-hour shifts three to five
times a month. At times, she was the only
physician on the premises at the Lincoln Park
Center.

1.

In 1990, a nurse at Humana informed the Clinical Director for the Lincoln Park Center, Dr. Thomas, that a rumor was circulating that Dr. Bekker smelled of alcohol while working. Dr. Thomas discussed the rumor with Dr. Bekker. That discussion led to the conclusion that the odor probably was Dr. Bekker's mouthwash.

In 1995, a patient reported that she had smelled alcohol on Dr. Bekker during her appointment. Dr. Bekker, at Humana's request, thereafter agreed to undergo an independent clinical evaluation to determine whether she suffered from an alcohol disorder. This evaluation was conducted at Rush-Presbyterian-St. Luke's Medical Center ("Rush") and was headed by Dr. Paul Feldman, a physician who specializes in the diagnosis and treatment of substance abuse, particularly substance abuse by physicians. At the completion of the evaluation, Dr. Feldman did not diagnose Dr. Bekker with alcohol abuse or dependence. He did, however, find "indicators suggestive of problematic alcohol usage." R.56 at 4. One of these indicators was a report from another physician who worked with Dr. Bekker. In this report, Dr. Bekker's colleague had stated that, while Dr. Bekker was working, he had smelled alcohol on Dr. Bekker's breath three or four times in the past five years; two of those occasions had occurred in the previous four months. Having found problematic alcohol usage, Dr. Feldman recommended that Dr. Bekker refrain from alcohol for one year and submit to random urine or blood testing to check for the presence of alcohol. Dr. Bekker agreed to the recommended program, refrained from alcohol for one year, and submitted to the random alcohol testing 13 times during that year; all the test results were negative. After the year ended, Dr. Bekker resumed social drinking.

2.

In 1996, another patient complained that Dr. Bekker had smelled of alcohol during her appointment. When advised of the complaint, Humana's Director of Employee Health Services/Risk Management, Diane Dusek, initiated an investigation and suspended Dr. Bekker pending the resolution of the investigation.

In her investigation, Dusek spoke first with the patient who had made the complaint. The patient confirmed that Dr. Bekker had smelled of alcohol during her appointment. Also, the patient stated that Dr. Bekker may have smelled of alcohol on a previous visit. Dusek then spoke with Dr. Bekker. In their conversation, Dr. Bekker denied drinking before or during working hours or while she was

on call.

The next day, Dr. Bekker again spoke with Dusek and suggested three possible reasons why she may have smelled of alcohol: (1) her face wash contained traces of alcohol, (2) her air freshener may have resembled the scent of alcohol, or (3) when she had recycled some beer bottles, the scent had lingered on her. Dr. Bekker offered to undergo daily alcohol testing to prove that she was not working while under the influence of alcohol. She also volunteered to pay for the cost of the breathalyser equipment needed to conduct the alcohol testing. Dusek refused her offer but continued her investigation into Dr. Bekker.

Dusek interviewed other staff members at Humana during the course of her investigation. A medical assistant reported that she had smelled alcohol on Dr. Bekker at least once a week, that Dr. Bekker had glassy eyes when the odor was present, and that both patients and employees had commented to her about the odor. A nurse reported that she had smelled alcohol on Dr. Bekker two or three times a week over the previous two years and that patients had commented to her that Dr. Bekker or her examination room had smelled of alcohol. Another employee also reported that Dr. Bekker had smelled of alcohol on at least a weekly basis, that Dr. Bekker's face was flushed and her eyes were dilated when the odor was present, and that a patient had commented to her that Dr. Bekker smelled of alcohol. Two triage nurses confirmed that they had smelled alcohol on Dr. Bekker and that other employees had spoken of the situation. Another physician reported that a week or two before the investigation, she had smelled an unusual odor on Dr. Bekker and had wondered if it was alcohol.

Humana did not test Dr. Bekker on any of the occasions when she allegedly smelled of alcohol, although testing is the only conclusive means to determine whether the substance that people reported smelling was in fact alcohol. Dusek stated that she found no evidence that Dr. Bekker consumed alcohol while at work, that she reported to work while impaired by alcohol, or that her professional care was diminished as a result of alcohol impairment. Dusek also admits that she never found evidence that Dr. Bekker actually provided poor patient care or exercised poor medical judgment. Also, Dr. Bekker's colleague, Dr. Thomas, stated that she did not think that Dr. Bekker ever drank alcohol at work.

Humana's Vice-President and Medical Director for Chicago, Dr. Ernest Weis, determined that, although Dr. Bekker could be discharged under her

employment contract for cause, he would continue her employment if she agreed to certain terms. Under his proposed agreement, Dr. Bekker must (1) submit to a clinical evaluation, (2) attend a prescribed formal recovery program, (3) undergo random alcohol testing for two years, (4) submit all test results and treatment plans to Humana's Employee Health Services, and (5) if she resigned during any treatment, agree to advise any future employer of her condition and to provide reports to Humana regarding her treatment. The agreement also stated that Dr. Bekker would be discharged if she failed to comply with the terms of the agreement, if Humana received any further complaints about Dr. Bekker's smelling of alcohol, or if Humana determined that Dr. Bekker was using any mood-altering chemicals.

In a meeting on December 6, 1996, Dr. Weis informed Dr. Bekker of these conditions and told her that he believed that she had a drinking problem that required treatment. He advised her that her employment would be continued only if she agreed to his conditions. During the meeting, Dr. Bekker again denied drinking on the job or reporting to work under the influence of alcohol. She offered to undergo daily testing, but Dr. Weis declined her offer. She told Dr. Weis that she would seek a second independent evaluation to prove that she was not under the influence of alcohol while at work. Finally, Dr. Bekker stated that she wanted to seek the advice of counsel before agreeing to Dr. Weis' conditions. Dr. Weis agreed. He did not set, at that time, a deadline by which Dr. Bekker needed to accept his conditions before he would discharge her.

On Monday, December 9, Dr. Bekker visited Dr. Feldman at Rush for her second evaluation. Prior to the appointment, Dr. Feldman received a communication from Dusek at Humana. Dr. Feldman did not disclose to Dr. Bekker the contents of Dusek's communication nor did he perform a clinical evaluation of Dr. Bekker that day. Instead, he recommended to Dr. Bekker that she check herself into Rush's residential treatment program. Dr. Bekker declined and stated that she wished to discuss the situation with counsel. Although Dr. Bekker never authorized Dr. Feldman to communicate with Humana, after her appointment, Dr. Feldman called Dusek to tell her that he had recommended treatment for Dr. Bekker so he could ascertain whether Dr. Bekker had a problem with alcohol.

The next day, December 10, Dr. Bekker called Dusek to inform her that she had contacted counsel regarding Dr. Weis' conditions. She told Dusek that her attorney would not be available until Monday, December 16; Dusek did not object to the delay.

On December 12, after hearing from Dusek that Dr. Bekker was not reviewing the proposed conditions with counsel until December 16, Dr. Weis sent a letter to Dr. Bekker by messenger. In the letter, he told her that she needed to accept his conditions by 9 a.m. on December 16 or her employment would be terminated.

In response to Dr. Weis' demand for an answer, Dr. Bekker met with alternative counsel on Friday, December 13. Counsel faxed a letter to Dr. Weis to request both information from Humana and a meeting with Dr. Weis. Nobody at Humana responded; indeed, Humana denies receiving this letter.

Dusek did not hear from Dr. Bekker on December 16, and she therefore informed Dr. Weis that Dr. Bekker had not contacted her. That same day, Dr. Weis called Dr. Feldman and requested information about Dr. Bekker's condition so that he could confront her. In a letter to Dusek dated December 16, Dr. Feldman wrote that he believed Dr. Bekker met the criteria for alcohol abuse. He wrote that, although Dr. Bekker did not appear to drink in the workplace, she drank heavily the night before and that the odor lingered into the next day. He also recommended that Dr. Bekker refrain from practicing medicine and enter a treatment program for chemically dependent healthcare professionals. Neither Dusek nor Dr. Weis spoke with Dr. Feldman after receiving this letter.

Dr. Weis sent a letter to Dr. Bekker on December 17 that informed her of her discharge. Dr. Weis later stated that he had terminated Dr. Bekker because he believed that she was an alcoholic and because she would not agree to the conditions he proposed at the December 6 meeting. He stated that Dr. Bekker presented a risk to her patients because, as an alcoholic, she might make bad clinical decisions. He also stated that she was a business threat because patients would not like seeing a physician who smelled of alcohol. He admitted that he did not know of any bad clinical decisions that she had made or of any patients who had stopped coming to her because of her problem.

3.

After Dr. Bekker's termination, Humana revoked her credentials. Dr. Bekker appealed, and the Appeals Committee recommended that she and Dr. Weis discuss the situation. He refused.

Humana has a policy against alcohol and drug use in the workplace. It states that "Employees shall be prohibited from working while under the

influence of alcohol and/or drugs. . . .
Compliance with this policy is a condition of
continued employment. Violation of any aspect of
this policy may subject the employee to
disciplinary action, up to and including
discharge." Ptf. Ex.8.

In Humana's view, alcohol use and perceived
alcohol use by its physicians can have many
adverse effects. Primarily, a physician under the
influence of alcohol may provide poor patient
care and exercise poor medical judgment. However,
even if patient care is not compromised, Humana's
view is that it is unprofessional for a physician
to attend patients while smelling of alcohol; the
patient may not have the appropriate respect for
a physician smelling of alcohol, and this lack of
respect could discourage the patient from
following the physician's advice. Finally, Humana
believes that, when one of its physicians smells
of alcohol, she projects an unprofessional image,
which harms the reputation of Humana and Humana's
other physicians.

The relationship between Humana and Dr. Bekker
was governed by a written employment contract.
This contract stated that the agreement "shall
automatically terminate, effective immediately,
upon notification by Medical Director . . . upon
one or more of the following occurrences: . . .
[Humana] reasonably believes that the health or
safety of patients is endangered by PHYSICIAN."
R.1-1, Ex.A at 4-5.

After her discharge and the revocation of her
credentials, Dr. Bekker filed this action against
Humana. She alleged that Humana discriminated
against her in violation of the ADA because it
perceived her as disabled by alcoholism.
B.  District Court Proceedings
1.

The district court determined that Dr. Bekker
was not a "qualified individual with a
disability" under the ADA. The court stated first
that Dr. Bekker had offered enough evidence to
show that Humana perceived her as having the
disability of alcoholism. Dr. Bekker proffered
statements of Dr. Weis, the decision maker, that
showed that he perceived her as an alcoholic
incapable of working as a physician. Moreover,
noted the court, when an employer offers an
employee a choice between a treatment program and
termination, the court reasonably may conclude
that the employer perceived the employee as
disabled by chemical dependence.

In determining whether Dr. Bekker was a
"qualified" individual with a disability, the
court stated that Dr. Bekker bore the burden of

establishing that she was not a direct threat to the health or safety of her patients and that she therefore was qualified. Being a direct threat, the court stated, meant that Dr. Bekker presented a significant risk of substantial harm to the health or safety of others that could not be reduced or eliminated by reasonable accommodation. A conclusion that Dr. Bekker was a direct threat required an individualized assessment, based on reasonable medical judgment, of her present ability to perform safely the essential functions of her job. According to the court, the assessment should examine (1) the duration of the risk, (2) the nature and severity of the potential harm, (3) the likelihood that the potential harm will occur, and (4) the imminence of the potential harm.

The court determined that ample evidence existed to show that Dr. Bekker was a direct threat to her patients' health or safety, as demonstrated by the numerous reports of people smelling alcohol on her while at work and by the reports of several employees who had observed her with glassy eyes. Reports of Dr. Bekker's smelling of alcohol were filed in 1990, 1995, and 1996. Thus, the court concluded, her drinking was of long duration with no clear end in sight. As well, the number of reports were substantial and appeared to be increasing. These facts, stated the court, indicated that there was an increasing likelihood of harm and that the harm was imminent. Therefore, the court held, Humana possessed sufficient evidence to show that Dr. Bekker was reasonably likely to be a direct threat to her patients. The court discounted Dr. Bekker's attempts to show she was not a direct threat. The court acknowledged that Dr. Bekker met professional standards and that she had not actually made any poor medical judgments. However, the court reasserted that the applicable assessment examined her present ability to perform safely the essential functions of her job and the likelihood she would cause future harm. The court also rejected Dr. Bekker's contention that her assessment had not been based on objective medical evidence. In the court's view, employee and patient reports of her smelling of alcohol constituted sufficiently objective evidence.

If a disabled employee is a direct threat, the court continued, it must determine whether that threat can be reduced or eliminated by reasonable accommodation. The court rejected Dr. Bekker's argument that she would not have been a direct threat if Humana had adopted her suggestion of daily testing as a reasonable accommodation to her perceived disability. Humana did not need to adopt Dr. Bekker's suggestion of daily testing,

the court reasoned, because the costs were excessive in relation to the benefits of such a regimen. Although daily testing would show whether Dr. Bekker was under the influence of alcohol, its costs outweighed the need for such daily information. Such testing, the district court continued, would not determine whether Dr. Bekker had used alcohol after she was tested, and Humana could not be expected to monitor her 24 hours a day. Also, noted the court, the burden on Humana to test Dr. Bekker daily would be unreasonable because it would place her co-workers in an awkward position when testing her and because there would be times when no one was available to administer the test to her. The court also stated that, even if daily testing were reasonable, Humana was not required to provide Dr. Bekker with the accommodation she requested or preferred but only with "some reasonable accommodation"; prospective treatment for an alcoholic is a reasonable accommodation. The court therefore held that Dr. Bekker was not a qualified individual with a disability under the ADA.

2.

The district court also held that, even if Dr. Bekker was a qualified individual with a disability, Humana had a legitimate nondiscriminatory reason for terminating her. An employer may discharge an alcoholic employee for conduct it would not tolerate in a sober employee or an intoxicated employee who is not an alcoholic. Humana was justified in discharging Dr. Bekker, the court concluded, because the reports that she smelled of alcohol were sufficient to find that she was under the influence of alcohol, and Humana could have discharged a worker who was not an alcoholic under the same circumstances.

3.

The court concluded that Humana could terminate Dr. Bekker under the employment contract if Humana reasonably believed that Dr. Bekker endangered the health and safety of her patients. Sufficient evidence existed, the court concluded, for Humana to determine that she did present such a danger to the health and safety of her patients. Therefore, the court held that Humana did not breach its employment contract with Dr. Bekker.

II
DISCUSSION
A. Standard of Review

We review de novo the district court's decision

to grant summary judgment to Humana. See Wright v. Illinois Dep't of Corrections, 204 F.3d 727, 729 (7th Cir. 2000). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In determining whether a genuine issue of material fact exists, we must review the record in the light most favorable to Dr. Bekker and make all reasonable inferences in her favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1088 (7th Cir. 2000).

To avoid summary judgment, Dr. Bekker was required to set forth specific facts showing that a genuine issue for trial existed. See Silk v. City of Chicago, 194 F.3d 788, 798 (7th Cir. 1999). She had to produce, moreover, more than a scintilla of evidence to support her position. See id. "A genuine issue of fact 'exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole.'" Bellaver v. Quanex Corp., 200 F.3d 485, 492 (7th Cir. 2000) (quoting Pipitone v. United States, 180 F.3d 859, 861 (7th Cir. 1999)).

B. Discrimination

The ADA prohibits an employer from discriminating against a qualified individual with a disability. See 42 U.S.C. sec. 12112(a)./3 The term "qualified individual with a disability" "means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. sec. 12111(8)./4 To establish disability discrimination, therefore, Dr. Bekker must show that (1) she is disabled within the meaning of the ADA, (2) she is qualified to perform the essential functions of her job either with or without reasonable accommodation, and (3) she suffered from an adverse employment decision because of her disability. See Moore v. J.B. Hunt Transp., Inc., No. 99-1853, 2000 WL 994327, *3 (7th Cir. July 19, 2000). In order to prevail, Dr. Bekker must establish all three elements of her claim.

First, Dr. Bekker must establish that she is disabled. To be disabled within the meaning of the ADA, Dr. Bekker must demonstrate that she (1) has "a physical or mental impairment that substantially limits one or more of the major

life activities of such individual;" (2) has "a record of such an impairment;" or (3) is "regarded as having such an impairment." 42 U.S.C. sec. 12102(2); see also Schneiker v. Fortis Ins. Co., 200 F.3d 1055, 1059-60 (7th Cir. 2000). Dr. Bekker claims, and Humana admits, that she comes within the third definition of disability because Humana regarded her as an alcoholic.

Humana nevertheless posits that, even if Dr. Bekker is an alcoholic, she is not a qualified individual with a disability because she presents a direct threat to the health and safety of her patients. "The term 'direct threat' means a significant risk to the health or safety of others that cannot be eliminated by reasonable accommodation." 42 U.S.C. sec. 12111(3). The district court agreed with Humana's assessment when it granted summary judgment to Humana. We have no disagreement with the analysis of the district court, which we already have set forth at length. Nevertheless, even assuming that Dr. Bekker is a qualified individual with a disability, Humana was justified in discharging her.

1.

Under the ADA, an employee has available two methods for establishing that her employer discriminated against her based on her disability. See Cheek v. Peabody, 97 F.3d 200, 203 (7th Cir. 1996). First, the employee "may present direct or circumstantial evidence that the employment decision was motivated by the employer's discriminatory animus." Bellaver, 200 F.3d at 492; see also DeLuca v. Winer Indus., Inc., 53 F.3d 793, 797 (7th Cir. 1995). Second, the employee may use the burden-shifting method set forth in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973), to prove by indirect evidence that her employer intentionally discriminated against her. See Robin, 200 F.3d at 1088; DeLuca, 53 F.3d at 797.

2.

We focus for now on the first of these methods. "Evidence of discrimination may be direct or circumstantial." Sheehan v. Donlen Corp., 173 F.3d 1039, 1044 (7th Cir. 1999). Direct evidence is evidence that "'in and of itself suggests' that someone with managerial authority was 'animated by an illegal employment criterion.'" Id. (quoting Venters v. City of Delphi, 123 F.3d 956, 972 (7th Cir. 1997)). "When the employee has presented evidence that the employer was motivated in part by discrimination, the defendant may then avoid a finding of liability

by proving that it would have made the same decision absent discrimination." Bellaver, 200 F.3d at 492 (emphasis added). To survive a motion for summary judgment, therefore, Dr. Bekker must present sufficient evidence to allow a rational jury to reasonably conclude that, but for her disability of alcoholism, Humana would not have discharged her. See Robin, 200 F.3d at 1089.

We note that an employer:

(1) may prohibit the illegal use of drugs and the use of alcohol at the workplace by all employees;

(2) may require that employees shall not be under the influence of alcohol or be engaging in the illegal use of drugs at the workplace;

. . . .

(4) may hold an employee who engages in the illegal use of drugs or who is an alcoholic to the same qualification standards for employment or job performance and behavior that such entity holds other employees, even if any unsatisfactory performance or behavior is related to the drug use or alcoholism of such employee . . . .

42 U.S.C. sec. 12114.

Dr. Bekker claims that Humana terminated her because it believed she was an alcoholic and not because it believed she was working while under the influence of alcohol. Humana submits that it was justified in terminating Dr. Bekker based on the complaints it received about her. Humana claims that it may hold an alcoholic employee to the same standards as a non-alcoholic employee. Because a non-alcoholic employee would be terminated if Humana concluded she was under the influence of alcohol while working, Humana contends that Dr. Bekker could be terminated under the same circumstances. Due to the serious risks to patients of being treated by a physician under the influence of alcohol, Humana states that it would be justified in terminating Dr. Bekker merely because she smelled of alcohol.

The risks of harm when a patient is seen by a physician under the influence of alcohol are many and serious. A physician under the influence of alcohol could prescribe the wrong medication or an incorrect dosage of medication. She could misdiagnose the patient's condition or could miss an important symptom indicative of a more serious condition, possibly one needing immediate attention or posing a threat to life. Moreover, a physician under the influence of alcohol might be clumsy with her instruments and cause serious harm to the patient because of a slip of the hand

or a second of inattention. Furthermore, the confidence of a patient in the capabilities of the physician understandably would be undermined if the patient became aware that the physician was under the influence of alcohol.

Humana has presented sufficient evidence to show that it had good reason to believe that Dr. Bekker was under the influence of alcohol while seeing patients. During Dusek's investigation, she received reports from employees and patients who had smelled alcohol on Dr. Bekker while she was working. Moreover, several of the employees had observed her with glassy or dilated eyes and a flushed face, signs of alcohol use. Reports stating that Dr. Bekker smelled of alcohol were filed in 1990, 1995, and 1996; the number of reports regarding Dr. Bekker were substantial and appeared to be increasing. In short, all of the reports indicating that Dr. Bekker was seeing her patients while under the influence of alcohol substantiate Humana's decision to discharge Dr. Bekker.

Furthermore, the persistent nature of the problem, despite Humana's intervention, substantiates the need for concern on the part of Humana. After the first patient reported that she had smelled alcohol on Dr. Bekker, Humana required her to undergo treatment, but, despite this treatment, Dr. Bekker continued to appear at work smelling of alcohol. The large number of reports of Dr. Bekker's symptoms also indicate the repetitious and long-term nature of Dr. Bekker's problem. With a suggestion of such pervasive alcohol use while Dr. Bekker was seeing patients, Humana was justified in terminating Dr. Bekker. A physician in such a patient-oriented practice, whether or not she is an alcoholic, justifiably could be discharged by her employer if the employer received numerous reports that suggested that the doctor was seeing patients under the influence of alcohol./5 Moreover, Humana has, and the ADA explicitly allows for, a policy prohibiting the use of alcohol in the workplace. Dr. Bekker, therefore, failed to present direct proof of intentional discrimination by Humana on account of a perceived disability of alcoholism. Indeed, Humana has offered substantial proof that it was justified in discharging her on the ground that she posed an immediate risk to patients.

3.

Dr. Bekker's case would fare no better under the McDonnell Douglas burden-shifting approach. See Cheek, 97 F.3d at 203. The Supreme Court established the burden-shifting method of proving intentional discrimination "[b]ecause employers

usually are careful not to offer smoking gun remarks indicating intentional discrimination. . . ." Robin, 200 F.3d at 1088. Under this method, a plaintiff first must establish a prima facie case of discrimination by her employer, which creates a presumption of intentional discrimination. See id.; Bellaver, 200 F.3d at 493. The burden of production then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. See DeLuca, 53 F.3d at 797. Once the employer has proffered a legitimate reason, the inference of discrimination disappears, and the plaintiff must prove by a preponderance of the evidence that the employer's proffered reason was a pretext for intentional discrimination. See Robin, 200 F.3d at 1088; Bellaver, 200 F.3d at 493. The ultimate burden to prove intentional discrimination remains with the plaintiff. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993); Bellaver, 200 F.3d at 493.

Assuming for the sake of argument that Dr. Bekker could establish a prima facie case of discrimination, Humana has proffered a legitimate nondiscriminatory reason for her discharge: the belief that she was under the influence of alcohol while seeing patients. Dr. Bekker has not presented any evidence to show that Humana's legitimate reason for her discharge was pretextual. By failing to rebut Humana's legitimate, nondiscriminatory reason, Dr. Bekker cannot meet her burden to show that she was a victim of intentional discrimination by Humana.

C.  Breach of Employment Contract

The relationship between Humana and Dr. Bekker was governed by a written employment contract. This contract stated that the agreement "shall automatically terminate, effective immediately, upon notification by Medical Director . . . upon one or more of the following occurrences: . . . [Humana] reasonably believes that the health or safety of patients is endangered by PHYSICIAN." R.1-1, Ex.A at 5.

Dr. Bekker states that enough evidence exists to demonstrate that a material fact question exists about whether Dr. Bekker was a threat to patient safety and that summary judgment therefore should not have been entered for Humana. Humana asserts that it did not breach her employment contract. The employment contract stated that, when Humana reasonably believed that Dr. Bekker was endangering the health or safety of her patients, she would automatically be discharged. The evidence shows that, based on the numerous reports of its employees and patients, Humana

reasonably believed Dr. Bekker to be a threat to her patients' health or safety. Humana therefore did not breach her employment contract.

Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

/1 The district court, acting at the request of the parties, placed the record in this case under seal. Although appellate proceedings can be sealed only by order of this court, see Union Oil Co. v. Leavell, No. 99-3084, 2000 WL 987701 (7th Cir. July 18, 2000) (publication page references not available), no such request has been made in this court. Moreover, the parties have proceeded with unsealed briefs and presented oral argument in open court. In any event, the facts disclosed here are no more intrusive than those found in similar disability cases, and their presentation is necessary to afford a clear understanding of our holding to those who rely on our precedents.

/2 Dr. Bekker originally started working for Humana's predecessor in 1983; however, because Humana is the party to this action, we shall refer only to Humana.

/3 The ADA prescribes that:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. sec. 12112(a).

/4 The term "reasonable accommodation" may include:

job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. sec. 12111(9).

/5 Before the district court, Dr. Bekker moved to strike her Rush medical records under the federal

confidentiality of records statute, 42 U.S.C. sec. 290dd-2, the Illinois statute on medical privileges, 735 ILCS sec. 5/8-802, and the bar to hearsay in the Federal Rules of Evidence. The district court denied her motion and allowed Humana to submit the documents in support of its motion for summary judgment. The district court's evidentiary rulings are reviewed for an abuse of discretion. See Rehling v. City of Chicago, 207 F.3d 1009, 1017 (7th Cir. 2000).

Even if we were to determine that the district court abused its discretion in making its evidentiary ruling, we still would affirm the district court. "[A] trial court's erroneous rulings may be deemed harmless if the record indicates that the trial court would have rendered the same judgment regardless of the error." Barber v. Ruth, 7 F.3d 636, 641 (7th Cir. 1993). We do not need to ascertain whether the district court incorrectly considered Dr. Bekker's medical records because we believe that, even without Dr. Bekker's medical records, sufficient evidence exists in the record to support Humana's decision to discharge Dr. Bekker. As we have noted in the text, Humana collected numerous reports from a variety of employees that documented the employees' repeated exposure to Dr. Bekker while she smelled of alcohol and exhibited other physical symptoms of alcohol use. The reports indicated that this problem occurred frequently and over a long period of time. Moreover, the problem was blatant enough that numerous employees as well as several patients commented on it. Based on these reports, even without Dr. Bekker's medical records, Humana had sufficient evidence to discharge Dr. Bekker.