In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3020

James Kersting,

Plaintiff-Appellant,

v.

Wal-Mart Stores, Inc., #6025 a/k/a
Wal-Mart Distribution Center and
Wal-Mart Stores, Inc.,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 99 C 0785--Stephen Crocker, Magistrate Judge.

Argued January 18, 2001--Decided May 18, 2001

Before Bauer, Manion, and Diane P. Wood,
Circuit Judges.

Manion, Circuit Judge.  James Kersting
sued his current employer, Wal-Mart
Stores, Inc., alleging that Wal-Mart
violated the Americans with Disabilities
Act ("ADA") by discriminating against him
because of his disability, and then by
retaliating against him for complaining
about such discrimination. Wal-Mart moved
for summary judgment. The district court
granted the motion, concluding that
Kersting failed to show that he suffered
a materially adverse employment action.
Kersting appeals. We affirm.

I.

   James Kersting has been employed at Wal-
Mart's distribution center in Menomonie,
Wisconsin, since April 1993. In December
1993, Kersting suffered an injury that
required surgery and which resulted in a
permanent disability to his left arm and
back. When he returned to work after
surgery, in consideration of his
disability, Wal-Mart placed him in a
lighter duty position called a Class II
Battery Mechanic. In 1995, Kersting
underwent another surgery to treat his
disability. When he returned to work
after his second surgery, Wal-Mart
continued to employ Kersting at various

light duty assignments from 1995 through 1997.

At the beginning of the summer of 1998, again in consideration of his disability, Wal-Mart created a new position for him called Class II Maintenance Utility. At that position, Kersting rebuilt equipment that otherwise would have been discarded by Wal-Mart. Although Kersting could not physically perform all of the requirements of a regular Class II position, Wal-Mart classified Kersting's unique job as Class II so that he would receive the Class II salary, which was equivalent to the salary level that he earned before his surgery. Kersting still works for Wal-Mart in this capacity.

Wal-Mart pays its employees according to their employment classification. A Class III mechanic receives a higher wage than a Class II employee. The Class III position also has more intellectual and physical requirements than a Class II position. A Class III mechanic must have an electrical mechanical background, and an ability to carry heavy tools and motors, and to climb ladders and crawl underneath conveyors and over racking. While Kersting could perform some of the Class III duties, he could not perform all of the essential functions of the Class III position without additional accommodation.

During the early summer of 1998, Kersting's supervisor, Jarrett Cassellius, notified James Swanson, the general manager of the Wal-Mart facility, that Kersting was regularly performing both Class II and Class III work. According to a Wal-Mart policy called the "50 percent rule," if a Class II employee performed Class III work for 50 percent or more of his time in a specific pay period, Wal-Mart would pay him Class III wages for that entire pay period. Swanson asked Cassellius to audit Kersting's work to determine whether he had performed enough Class III work during certain pay periods to qualify for the Class III rate under the 50 percent rule. Cassellius's audits confirmed that Kersting was performing enough Class III work over certain pay periods to receive the Class III rate of pay. Kersting suggested to Cassellius that because he was routinely working more than 50 percent at Class III work, his wage should be permanently

reclassified to the Class III rate. Cassellius notified Swanson of Kersting's request.

Around September 1998, Swanson decided that in order to avoid the "hassle" of having to audit Kersting's work each pay period to determine whether he qualified for Class III wages under the 50 percent rule, Swanson had Cassellius submit a request to Wal-Mart's personnel department to permanently reclassify Kersting's wage to the Class III rate. But Brian Ockerman, Wal-Mart's personnel manager, denied the request. According to Kersting, Ockerman told him that he denied the request "because you are disabled and that is a $5,000 a year difference." Ockerman disputes Kersting's allegation, and claims that he denied the request because it would have required a total restructuring of a Class III position, which was not a reasonable accommodation under the company's wage and salary guidelines. Wal-Mart's wage classification guidelines do not allow for a Class II employee to be paid Class III wages on a permanent basis. Kersting continues to work at his Class II position, and remains eligible to collect Class III pay when he performs enough Class III work in a pay period to qualify under the 50 percent rule.

When Kersting requested permanent Class III wages, no Class III position was available. Kersting has never applied for a Class III position. And he testified that he would not have accepted two Class III positions that were available some months before his request to reclassify his wage because the shifts for those Class III jobs were undesirable.

In response to Ockerman's denial of his request to reclassify his wage, on October 12, 1998, Kersting filed a complaint of disability discrimination with the Wisconsin Equal Rights Division and the Equal Employment Opportunity Commission ("EEOC").

On October 23, 1998, Swanson and Ockerman told Kersting's supervisor, Kim Koenig, that Kersting was upsetting his colleagues by discussing his discrimination claim and by criticizing Swanson and Ockerman in the workplace. In response, Koenig talked with Kersting that same day about his need to refrain

from discussing his complaint in the workplace, and he indicated that continued discussions could lead to Kersting's termination. As a result of that warning, on March 10, 1999, Kersting filed a retaliation claim against Wal-Mart, alleging that the company retaliated against him for filing his discrimination claim.

In April 1999, Kersting was called to a meeting in Swanson's office, where he was given a disciplinary warning for allegedly talking to co-workers about his discrimination claim. Kersting also alleges that after he filed his discrimination claim, he was put to work in a variety of make-work and demeaning jobs, and was deprived of the tools necessary to do his work. Wal-Mart never reduced Kersting's salary or changed his work hours after he filed his discrimination claim.

After receiving his right-to-sue notices from the EEOC on his discrimination and retaliation claims, Kersting sued Wal-Mart in federal court. Wal-Mart moved for summary judgment. The district court granted the motion, concluding that Kersting's discrimination claim failed because the denial of his request to permanently reclassify his wage to the Class III level while he continued to work in his Class II position was not an adverse action. On Kersting's retaliation claim, the district court decided that while Kersting complained about six adverse actions, he only charged the October 23, 1998 verbal warning in his EEOC complaint. The court determined that it would only consider the charged incident and the April 1999 written warning because it was reasonably related to the charged incident. The court concluded that the verbal and written warnings did not amount to an adverse employment action because Kersting had not been terminated, demoted, placed on probation, or subjected to any other tangible job consequence. The district court also commented that Kersting's four other alleged instances of retaliation did not amount to a materially adverse employment action. Kersting appeals.

II.

Kersting argues on appeal that the district court erred in granting summary

judgment for Wal-Mart. We review de novo the district court's decision to grant summary judgment to Wal-Mart, construing all facts, and drawing all reasonable inferences from those facts, in favor of Kersting, the non-moving party. Oest v. Illinois Dep't. of Corrections, 240 F.3d 605, 610 (7th Cir. 2001). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To survive summary judgment, Kersting must "set forth specific facts showing that there is a genuine issue for trial." Fed.R. Civ.P. 56(e).

According to Kersting, Wal-Mart violated the ADA when it denied him a raise and promotion because of his disability, and retaliated against him for filing his discrimination complaint. "The ADA prohibits an employer from discriminating against a qualified individual with a disability." Bekker v. Humana Health Plan, Inc., 229 F.3d 662, 669 (7th Cir. 2000) (citing 42 U.S.C. sec. 12112(a))./1 To establish disability discrimination, Kersting must show all three of the following elements: (1) that he is disabled within the meaning of the ADA, (2) that he is qualified to perform the essential functions of his job either with or without reasonable accommodation, and (3) that he suffered from an adverse employment action because of his disability. Bekker, 229 F.3d at 670.

To establish the third element of an ADA claim, an employee may present direct evidence that the employment decision was motivated by the employer's discriminatory animus. Id. Direct evidence is evidence that "'in and of itself suggests' that someone with managerial authority was 'animated by an illegal employment criterion.'" Id. (quoting Sheehan v. Donlen Corp., 173 F.3d 1039, 1044 (7th Cir. 1999)).

In this case, the parties do not dispute that Kersting is disabled. And for purposes of summary judgment, we must accept as true Kersting's claim that Ockerman told him that he would not reclassify Kersting's wage "because you

are disabled." But the ADA does not forbid "every bigoted act or gesture that a worker might encounter in the workplace." Hunt v. City of Markham, Ill., 219 F.3d 649, 653 (7th Cir. 2000). The employee must also show that he suffered an adverse employment action. Id. at 653.

An adverse employment action must be "materially" adverse to be actionable, meaning "more than a 'mere inconvenience or an alteration of job responsibilities.'" Oest, 240 F.3d at 612 (quoting Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993)). For example, a "'materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" Oest, 240 F.3d at 612 (quoting Crady, 993 F.2d at 136). We have noted, however, that "not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that 'an . . . employee did not like would form the basis of a discrimination suit.'" Oest, 240 F.3d at 613 (quoting Smart v. Ball State Univ., 89 F.3d 437, 441 (7th Cir. 1996)). Because "'adverse actions can come in many shapes and sizes,'" Oest, 240 F.3d at 613 (quoting Knox v. State of Indiana, 93 F.3d 1327, 1334 (7th Cir. 1996)), we must consider the particular facts of this case to determine whether Kersting has suffered a materially adverse employment action.

A.  Discrimination Claim

Kersting argues on appeal that he suffered an adverse employment action when Ockerman refused to grant him a raise by denying his request to reclassify his wage at the Class III level.

This court has held that the denial of a raise may constitute a material adverse action. Fyfe v. City of Fort Wayne, 241 F.3d 597, 602 (7th Cir. 2001) (citing Hunt, 219 F.3d at 654). That is because a raise may be a "normal and expected element" of a worker's salary, Fyfe, 241 F.3d at 602, that keeps his "wages from

falling in real terms" due to the rate of inflation. Hunt, 219 F.3d at 654. Thus, denying a worker's raise may mean "cutting his wage in real terms." Id. Moreover, raises may be the normal way for a company to reward a worker's increased productivity that comes with experience on the job, and to satisfy a worker's legitimate expectations for a rising standard of living. Id.

Kersting was not denied a raise. Ockerman did not deny Kersting a normal and expected raise for his Class II position; he denied a proposal to permanently reclassify Kersting's wage to the level earned by workers in the Class III position. Kersting received, and continues to receive, Class III pay for each pay period in which his work qualifies for Class III pay under the 50 percent rule. Hence, his wages have not been cut at all, even in real terms, as Wal-Mart's 50 percent rule provides him with a windfall for each pay period that the rule applies. Furthermore, the proposal to reclassify his wage was not of the nature of a raise because it was not a normal and expected element of Kersting's employment at Wal-Mart. It was contrary to the company's wage classification guidelines, and purely discretionary as Swanson made the proposal because he merely wanted to avoid the "hassle" of having to audit Kersting's work each pay period.

Kersting also argues that he suffered an adverse action because Ockerman denied him a promotion because of his disability. Although this court has recognized that the denial of a promotion may be an adverse action, see Hunt, 219 F.3d at 654, that is not what happened in this case. Kersting cannot perform all of the essential functions of the Class III position. He never sought a promotion to the Class III position, as he never applied for one when there was an opening. Moreover, no Class III positions were available when the proposal to reclassify his wage was sent to Ockerman. Ockerman refused to reclassify Kersting's wage; he did not deny him a promotion.

Although Kersting does not characterize his complaint as a request for a further accommodation, in effect that is what his claim would entail. He is essentially arguing that Wal-Mart violated the ADA by

denying his request for a further accommodation in the form of a permanent Class III wage for his modified Class II position. Although Kersting cannot perform all of the essential functions of the Class II position, Wal-Mart accommodated Kersting by creating a unique position called the Class II Maintenance Utility position. And the company's 50 percent rule has enabled Kersting to make Class III wages during some pay periods. Kersting now wants something that is one of a kind--a permanent Class III wage for work at his unique Class II position. But Wal-Mart "is not obligated to provide [Kersting] the accommodation he requests or prefers, the employer need only provide some reasonable accommodation." Gile v. United Airlines, Inc., 95 F.3d 492, 499 (7th Cir. 1996); see also Schmidt v. Methodist Hosp. of Indiana, 89 F.3d 342, 344 (7th Cir. 1996) ("[r]easonable accommodation does not require an employer to provide literally everything the disabled employee requests."). Clearly, Wal-Mart satisfied its statutory duty when it tailored Kersting's Class II job to accommodate his disability. And the company's decision not to provide a further accommodation (in the form of a Class III wage for a Class II worker) is not a violation of the ADA. Therefore, Kersting's discrimination claim fails.

Although not argued by the plaintiff, we also recognize that in the Title VII context, an employer's decision to deprive an employee of at least being considered for a position may constitute an adverse employment action. Hishon v. King & Spalding, 467 U.S. 69, 76 (1984). But the benefit of being considered for a higher post must be held out by the employer as a privilege of employment; in other words, it must be the employer's customary practice, and thus "part and parcel of the employment relationship" that the employee had reason to anticipate he would be able to receive. Id. In Hishon, the Supreme Court concluded that the opportunity for an associate to be considered for partnership in a law firm was a "term, condition, or privilege" of employment because the law firm used the prospect of partnership to induce young lawyers to join the firm, and because associates were terminated if they were not elected to become partners. Hishon, 467 U.S. at

In that context the lawyer either moved up or moved out; thus at least being considered for moving up to partner was essential.

But that is not the case here. Advancing to Class III within a certain period of time is not a prerequisite for Kersting to keep and succeed in his Class II position. Swanson's proposal to reclassify Kersting's wage to the Class III level was purely discretionary, unique, and contrary to Wal-Mart's wage classification guidelines. There is no evidence to indicate that consideration for the reclassification was a customary practice at Wal-Mart, or a term, condition, or privilege of Kersting's employment. Thus, even if Ockerman deprived Kersting of nondiscriminatory consideration for Class III wages, that was not an adverse employment action.

B.  Retaliation Claim

Kersting also argues on appeal that the district court improperly granted summary judgment for Wal-Mart on his retaliation claim. The ADA's retaliation provision prohibits employers from "discriminat[ing] against any individual because [he] has opposed any act or practice made unlawful by [the ADA] or . . . has made a charge [under the ADA]." 42 U.S.C. sec. 12203(a).  A plaintiff bringing a retaliation claim may present either direct evidence of discrimination or indirect evidence under the burden-shifting method set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Silk v. City of Chicago, 194 F.3d 788, 799 (7th Cir. 1999). Because Kersting proceeds under the latter course, he must first present a prima facie case of retaliation by demonstrating that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse action; and (3) there is a causal link between the protected expression and the adverse action. Id. If Kersting establishes a prima facie case, Wal-Mart must then offer a legitimate, nondiscriminatory reason for its adverse action. Id. Then Kersting must rebut that legitimate reason by showing that Wal-Mart's action was motivated by a discriminatory purpose. Id. "'Although the burden of production shifts under this method, the burden of persuasion rests at all times on the plaintiff.'"

Id. (quoting Adusumilli v. City of Chicago, 164 F.3d 353, 362 (7th Cir. 1998)).

Kersting has identified six events or decisions where he alleges that Wal-Mart retaliated against him for filing his discrimination claim: (1) On October 23, 1998, Koenig warned Kersting that he could be fired if he continued to speak of his discrimination complaint and to criticize management at work; (2) in April 1999, Kersting's supervisors gave him a written disciplinary warning for allegedly talking to co-workers about his discrimination complaint; (3) for approximately a year and a half, Wal-Mart assigned Kersting to work in an area in the distribution center known as "the cage"; (4) after leaving the cage, Wal-Mart assigned Kersting to work in an area with no workbench, lighting or outlets; (5) in the Winter of 1999, Kersting was deprived of his tool box; and (6) in the Spring of 1999, Wal-Mart prohibited Kersting from using a computer to document parts that he used.

The only incident alleged in Kersting's EEOC charge was the October 27, 1998 warning. Thus, the district court concluded that it need only consider that charged allegation along with the April 1999 warning because it was reasonably related to the charge. The court determined that Kersting waived the other four allegations because he failed to present them to the EEOC for investigation.

Kersting's first contention on appeal is that the district court should have considered all of his allegations because they are all reasonably related to the charged allegation. "'A plaintiff may pursue a claim not explicitly included in an EEOC complaint only if [his] allegations fall within the scope of the charges contained in the EEOC complaint.'" Conley v. Village of Bedford Park, 215 F.3d 703, 710 (7th Cir. 2000) (quoting Cheek v. Peabody Coal Co., 97 F.3d 200, 202 (7th Cir. 1996)). To determine whether the allegations in the complaint fall within the scope of the earlier EEOC charge, we must look at whether the allegations are "'like or reasonably related to'" those contained in the charge. Conley, 215 F.3d at 710 (quoting Cheek, 97 F.3d at 202). Claims are

reasonably related if there is a factual relationship between them. Cheek v. Western and Southern Life Ins. Co., 31 F.3d 497, 501 (7th Cir. 1994). That means that "the EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals." Id. (emphasis in original).

In this case, we agree with the district court that Kersting waived all of his allegations of retaliation except for the charged allegation (the October 23, 1998 warning) and the April 1999 written warning, as it involved the same individuals (Kersting's supervisors, especially Koenig and Swanson) and similar conduct (warnings about discussing the discrimination complaint in the workplace) as the charged allegation. The other allegations do not involve the same type of conduct, and there is no indication in the record that the same supervisors were involved. Therefore, we need only consider whether the verbal and written warnings constituted illegal retaliation.

We conclude that on this record, the two warnings do not amount to a materially adverse employment action and thus do not constitute illegal retaliation. The record demonstrates that Kersting was warned not to discuss his discrimination claim at work because his supervisors believed that it disrupted the workplace. There is no indication in the record that Kersting received the warnings simply because he filed a discrimination claim. The warnings were due to his discussion of his complaints and criticism of management while at the workplace. Significantly, the two warnings did not result in, and were not accompanied by, any tangible job consequence. Kersting has not been terminated, placed on probation, or hindered in any way from maximizing his pay under the 50 percent rule since he complained to the EEOC and sued Wal-Mart. Thus, we conclude that the two warnings alone do not rise to the level of a materially adverse employment action. See Sweeney v. West, 149 F.3d 550, 556-57 (7th Cir. 1998) (holding that an employee did not suffer from an adverse employment action when she was unfairly reprimanded and warned that any further complaints about her conduct would result in disciplinary action); see also Kerns v. Capital Graphics, Inc., 178

F.3d 1011, 1014-17 (8th Cir. 1999) (holding that a supervisor's criticism and threat that the plaintiff would be "fired for any subsequent exercise of poor judgment" did not amount to an adverse employment action). Because Kersting has failed to demonstrate that he suffered an adverse action, his retaliation claim fails./2

## III.

Because Kersting has not presented sufficient evidence to show that there is a triable issue that he suffered a materially adverse employment action, his discrimination and retaliation claims fail. We thus Affirm the district court.

FOOTNOTES

/1 The ADA prescribes that: "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. sec. 12112(a).

/2 We also note that none of the other four allegations (taken individually or collectively) amounts to a materially adverse employment action. Kersting's claim that he was assigned to an undesirable work area called "the cage" is based solely on his own allegations that this fenced-in area within the building seemed to himself and others like a kind of punishment. But he provides no testimony from colleagues to support his allegation, and no evidence that work in the cage involved lower pay, different hours, or any sort of hindrance from earning Class III pay under the 50 percent rule. Although Kersting may have been annoyed with having to work in that area, that does not mean that the assignment was an adverse action. See Smart, 89 F.3d at 441.

Kersting also fails to show that his other three allegations amount to an adverse action. On his claim that he was assigned to an area with no workbench, lighting or outlets, Kersting also testified that he did not dislike the area, and that it was adequate. Regarding his claim that he was deprived of his tool box, Kersting presents no evidence to indicate who deprived him of his tool box and why, and whether that action also deprived him of the ability to complete his work or maximize his pay. Finally, concerning Kersting's claim that Wal-Mart prohibited him from

documenting parts on a computer, Kersting never complained about the policy except to state that it "just seems a little goofy." All of these allegations merely involve minor or trivial employment actions, and thus do not rise to the level of an adverse employment action. Id. Furthermore, all six actions together still do not amount to a materially adverse employment action.