FOREST PRESERVE DISTRICT OF COOK COUNTY, Petitioner-Appellant, v. THE ILLINOIS LOCAL LABOR RELATIONS BOARD et al., Respondents-Appellees.

First District (6th Division)   No. 1—88—1834

Opinion filed October 27, 1989.

Vedder, Price, Kaufman & Kammholz, of Chicago (Andrea R. Waintroob, Charles P. Rose, and Peter R. Bulmer, of counsel), for petitioner.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and William D. Frazier, Assistant Attorney General, of Chicago, of counsel), for respondents.

JUSTICE QUINLAN delivered the opinion of the court:
Petitioner, the Forest Preserve District of Cook County (District),

appealed to this court the final decision of respondent, the Illinois Local Labor Relations Board (Board), entered in favor of respondent, the Fraternal Order of Police, Illinois Labor Council (FOP). The Board had ordered the District to cease and desist from displacing incumbent District police officers who failed to achieve a score of at least 70% on the civil service examination for District police officers until it had bargained in good faith with the FOP over the examination. The Board also ordered the District to reinstate with back pay all incumbent police officers who had been dismissed for failing to achieve a 70% or higher score.

The District, an independent unit of local government created by State law, maintains its own police force in order to patrol District property, enforce laws and ordinances, and assist those using the Cook County forest preserves. Cook County, the county in which the District is located, is governed by civil service laws. Accordingly, the District is also governed by the same civil service laws, including the civil service laws pertaining to the selection of employees. See Ill. Rev. Stat. 1987, ch. 96½, par. 6420.

Pursuant to the Cook County civil service laws, all applicants for civil service jobs must take a civil service examination. (Ill. Rev. Stat. 1987, ch. 34, par. 1110.) Based on the results of the examination, the Civil Service Commission (Commission) prepares a register of those who have attained at least the minimum test score fixed by the rules of the Commission. Applicants who have passed the exam, the "eligibles," are then ranked according to their respective scores. (Ill. Rev. Stat. 1987, ch. 34, par. 1112.) When a position is available, the Commission certifies the highest ranking candidate to the head of the institution, office or department in which the position is classified. Ill. Rev. Stat. 1987, ch. 34, par. 1114.

The Commission also has its own rules and regulations providing that those entered on the civil service register must obtain an average of at least 70% out of 100% on the civil service exams. (Cook County Civil Service Rule IV.) Further, if there is a vacant position and the list of eligible applicants on the register has been exhausted, the Commission rules provide that the Commission may make a temporary appointment. (Cook County Civil Service Rule VI.) A temporary appointment is defined in the Commission rules as "[t]he employment of a person in a position from day to day when an appointment by certification or reinstatement cannot be made and which shall be terminated when an eligible can be certified or reinstated to the position." Cook County Civil Service Rule I.

At the time of the administrative hearings in this case, the Dis-

trict employed 70 full-time police officers, 40 of whom were temporary appointments and had served as temporaries for a period ranging from 2 to 12 years. On April 23, 1986, the Commission announced that it would conduct Examination 3818, a three-part examination, for candidates for District police officer positions (the last District police officer examination had been administered in 1979). The first part of the exam was administered in July 1986 and consisted of a written exam and psychological testing. The second part was administered in September 1986 and was a physical examination, which included drug screening. The third and last part of the examination was an oral exam. Approximately 2,000 applicants took the examination, including all of the District's temporary police officers. Out of the 2,000 applicants, 258 were found eligible. However, 17 of the temporary police officers were found ineligible because they did not receive a score of at least 70% on the exam. The other 23 temporary officers ranked from 6 to 252 out of the 258 eligible applicants. Based on the results of Examination 3818, the District told the 17 temporary officers who had failed to achieve 70% on the exam to find other employment. The District also informed the 23 eligible temporary officers that they would be given a position on the District police force when their position or rank on the register was reached.

Around this same time, on May 12, 1986, respondent FOP was certified by the Board as the exclusive representative of the District police officers, including the 40 temporary officers. On December 12, 1986, the FOP filed an unfair labor practice charge with the Board, alleging that the District unilaterally implemented drug screening and psychological tests as part of the civil service examination, tests which had never been part of the examination before, without first bargaining in good faith with the FOP. The Board investigated this charge and issued a complaint on February 25, 1987. Three hearings were held on this complaint (June 8, September 28, and October 27, 1987). Six weeks after the October 27 hearing, the FOP filed a motion to amend the complaint to challenge Examination 3818 in its entirety. This motion was allowed over the District's objections.

The FOP charged that the District had violated section 7 of the Illinois Public Labor Relations Act (Labor Act), which requires a public employer to bargain over any matter concerning wages, hours or other conditions of employment not provided for in any other law (Ill. Rev. Stat. 1987, ch. 48, par. 1607), when it implemented Examination 3818 and required the temporary officers to pass the exam without first bargaining over the exam with the FOP. The District responded that the complaint should be dismissed because the FOP's complaint

was not timely filed and the FOP had waived its right to bargain because it had never requested bargaining. The District also contended that it had no duty to bargain over Examination 3818.

On January 29, 1988, the hearing officer issued his recommended decision and order. The hearing officer's findings of fact were as follows: the FOP was a labor organization within the meaning of section 3(i) of the Labor Act (Ill. Rev. Stat. 1987, ch. 48, par. 1603(i)); the District was a public employer within the meaning of section 3(o) of the Labor Act and was under the Board's jurisdiction pursuant to sections 5(b) and 20(b) of the Labor Act (Ill. Rev. Stat. 1987, ch. 48, pars. 1603(o), 1605(b), 1620(b)); the District police officers were public employees within the meaning of section 3(n) of the Labor Act (Ill. Rev. Stat. 1987, ch. 48, par. 1603(n)); the status of a District police officer as certified or temporary was the same in all respects, except that certified officers were entitled to notice and a hearing by the Commission before they could be dismissed from the force or suspended for more than 29 days; the sheet announcing Examination 3818 did not mention that the temporary police officers would be required to take and pass Examination 3818 in order to keep their jobs; results from Examination 3818 were posted on January 9, 1987; and there was no evidence as to how, when or if the temporary officers were told that they were required to take and pass Examination 3818 in order to retain their jobs, nor was there evidence that the District ever offered to bargain over the exam.

In his conclusions of law, the hearing officer held that the FOP's charge was timely filed and the FOP had not waived its right to bargain over the examination. The hearing officer then held, however, that the District had not violated section 7 of the Labor Act, concluding that application of the Commission prerequisites for eligibility to the temporary officers did not involve the terms and conditions of employment of the temporary officers. The hearing officer, therefore, recommended that the complaint charging the District with Labor Act violations be dismissed.

Both parties filed exceptions to the hearing officer's recommended decision and order with the Board. The Board agreed with the hearing officer that the FOP's charge was timely filed and that the FOP had not waived its right to bargain. The Board disagreed, however, with the hearing officer's conclusion that the District had no duty to bargain over the administration of the exam. Accordingly, on May 18, 1988, the Board ordered the District to cease and desist from displacing the temporary officers for failing to achieve a certain score on Examination 3818 until it had bargained with the FOP, in good

faith, over the proposal. The Board also ordered the District to reinstate with back pay any officers who had been dismissed, demoted, reduced in grade or laid off as a result of the exam. The District now appeals that order to this court.

On appeal, the District first claims that the FOP's charge was untimely filed because it was filed more than six months after the alleged unfair labor practice, the administration of Examination 3818, occurred. The District notes that a charging party has six months from the date on which he had notice of an unfair labor practice to file an unfair labor practice charge. (See Ill. Rev. Stat. 1987, ch. 48, par. 1611(a).) The District alleges that the FOP had notice of its alleged unfair labor practice, the civil service examination, on April 23, 1986, when the examination was announced, but nonetheless did not file its charge until December 12, 1986, after the six-month limitation period had run. In response to the Board's finding that the six-month period did not begin when the examination was announced, but instead began at an undetermined later date when the District decided to dismiss the temporary police officers, the District argues that it never made an affirmative decision to dismiss the officers who failed to receive a score of at least 70% on the exam, but that it was required by law to dismiss those officers, and the District could not have retained the officers in any case. Finally, the District contends that the fact that it announced the examination put the FOP on notice that the District was preparing a list of eligible police officers to replace the temporary officers, and the fact that all of the temporary police officers took the examination proves that those officers knew they were required to complete and pass the examination in order to retain their jobs.

Respondent Board, however, claims that the temporary officers were never told that they had to take and pass the civil service examination in order to keep their jobs; thus, merely announcing the examination was not sufficient to provide notice. Accordingly, the Board contends that the FOP's charge was timely filed. Likewise, respondent FOP contends that the temporary officers here were never notified that a certain score on the examination was required in order to retain their jobs; hence, the FOP's delay in filing the charge was excused. The FOP also argues that the fact that all the temporary officers took the examination does not prove that those officers had notice, but merely shows that those officers were trying to achieve the "advantages and protections" of civil service status.

■ The parties correctly observe that a charge based upon an unfair labor practice must be filed within six months of the alleged un-

fair labor practice, "unless the person aggrieved thereby did not reasonably have knowledge of the alleged unfair labor practice." (Ill. Rev. Stat. 1987, ch. 48, par. 1611(a).) Here, the hearing officer and the Board found that there was no evidence in the record that the temporary officers were ever informed that they were required to take and pass Examination 3818 with a score of at least 70% in order to keep their jobs. Accordingly, the Board held that the six-month date did not begin when the examination was announced, but began at an unknown later date, and that under these circumstances, the FOP's delay in filing the unfair labor practice charge was excused.

■ An administrative agency's findings of fact are presumed *prima facie* true and correct, and a reviewing court will reverse the agency's findings only if those findings are contrary to the manifest weight of the evidence. (*Brewington v. Illinois Department of Corrections* (1987), 161 Ill. App. 3d 54, 72, 513 N.E.2d 1056, 1068.) Here, there is no evidence in the record contradicting the Board's finding that the temporary officers did not reasonably have knowledge that they were required to take and pass Examination 3818 in order to retain their jobs. Consequently, we cannot say that the Board's finding that the FOP was excused for its delay in filing the unfair labor practice charge was against the manifest weight of the evidence. Hence, we cannot say that the Board's decision on this issue was improper.

The District next appeals the Board's finding that Examination 3818 was a mandatory subject of bargaining. The District contends that this finding was erroneous as a matter of law. The District argues that the examination was not a mandatory subject of bargaining because the District was legally required, under the civil service rules, to terminate the temporary officers once a new list of eligibles was established. Since it was required by law to terminate the temporary officers, the District contends that the duty to bargain set forth in the Labor Act did not apply, noting that the Labor Act imposes an obligation to bargain over matters related to wages, hours and conditions of employment *not specifically provided for in any other law.*

The Board maintains that the requirement that the temporary officers take and pass Examination 3818 in order to keep their jobs is a matter with respect to wages, hours and condition of employment and, therefore, the issue was a mandatory subject of bargaining. The Board also claims that conflicts between public employee bargaining laws and local civil service laws should be resolved in favor of the bargaining laws. Finally, the Board contends that the District is estopped from requiring the temporary officers to meet the requirements of the civil service rules, given the length of time the temporary officers

have held their positions, in addition to the fact that some of the officers retained their positions as temporary officers even after the 1979 civil service examination was administered.

Respondent FOP also urges this court to affirm the Board's finding that Examination 3818 was a mandatory subject of bargaining. The FOP argues that the Labor Act predominates over the civil service rules, citing section 15 of the Labor Act, which provides: "In case of any conflict between the provisions of this Act and any other law, executive order or administrative regulation relating to wages, hours and conditions of employment and employment relations, the provisions of this Act or any collective bargaining agreement negotiated thereunder shall prevail and control." (Ill. Rev. Stat. 1987, ch. 48, par. 1615.) In addition, the FOP contends that the civil service rules do not require the District to terminate its temporary employees once a new list of eligibles is established, nor does it prevent the District from negotiating over employment of the temporary employees.

Both the Board and the FOP rely on the Illinois Supreme Court decision in *City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268* (1988), 122 Ill. 2d 353, 522 N.E.2d 1219, in support of their claim that the Labor Act's mandatory bargaining provisions predominate over the civil service rules. In *Decatur*, the Illinois Supreme Court held that the City of Decatur (City) was required to bargain under section 7 of the Labor Act over a union proposal which would allow employees to submit disciplinary grievances to arbitration, despite the City's adoption of statutory civil service provisions. (*Decatur*, 122 Ill. 2d 353, 522 N.E.2d 1219.) The City had argued that it had no duty to bargain over disciplinary matters that fell within the scope of the civil service provisions. (*Decatur*, 122 Ill. 2d at 357, 522 N.E.2d at 1220.) The court noted that other jurisdictions have favored public employee bargaining laws over local civil service rules when faced with a conflict between the two. (*Decatur*, 122 Ill. 2d at 363, 522 N.E.2d at 1223.) The court then stated, "We do not believe that the legislature intended to make the broad duties imposed by the [Labor] Act hostage to the myriad of State statutes and local ordinances pertaining to matters of public employment." (*Decatur*, 122 Ill. 2d at 364, 522 N.E.2d at 1224.) The *Decatur* court also observed that the civil service scheme adopted by the City was optional; thus, the City could eliminate the provisions at issue in the case if it chose. *Decatur*, 122 Ill. 2d at 365-66, 522 N.E.2d at 1224.

The District distinguishes the *Decatur* case from this case based on the fact that the adoption of the civil service scheme in *Decatur*

was optional and the City could eliminate the provision at issue, while the application of the civil service rules in this case was mandatory and the District, therefore, could not eliminate the provision at issue in this case even if it wanted to do so. Respondents, however, urge this court to take a broader view of the *Decatur* case, recognizing a policy favoring public employee bargaining laws over civil service rules.

■■ ■ In reviewing issues involving an agency determination on a question of law, the reviewing court must determine whether the agency abused its discretion. (*City of Chicago v. Illinois Local Labor Relations Board* (1988), 182 Ill. App. 3d 588, 594, 536 N.E.2d 1219, 1223.) We hold that the Board did not abuse its discretion here in finding that the administration of Examination 3818 was a mandatory subject of bargaining. In doing so, we decline to adopt the District's narrow interpretation of the *Decatur* case as holding that the Labor Act predominates over civil service rules only when the civil service scheme is optional. We believe the Board correctly interpreted the *Decatur* case as recognizing a policy favoring public employee bargaining laws over civil service rules. Applying a policy favoring public employee bargaining laws over civil service rules to the facts of this case then, we find that the Labor Act predominates over the Commission rules concerning temporary employees and that the administration of Examination 3818 was a matter involving wages, hours and conditions of employment under the Labor Act. As such, the examination was a mandatory subject of bargaining.

■■ ■ We also find that the Board's decision here which required arbitration was correct because the District was estopped from applying Examination 3818 requirements to the temporary officers. The doctrine of estoppel may be applied against a municipal corporation if, under the circumstances of the case, the affirmative acts of the municipality have caused another to take certain actions, thereby creating a situation where it would be inequitable and unjust to allow the municipality, in effect, to retract what it had previously done. (*City of Chicago v. Sievert Electric Co.* (1985), 134 Ill. App. 3d 552, 556, 481 N.E.2d 1, 4.) Here, the doctrine of estoppel applies because the temporary officers had been allowed to retain their jobs for a period from 2 to 12 years, and because those temporary officers hired before 1979 were allowed to retain their jobs as temporary officers following the 1979 civil service examination. Given the length of time that the temporary officers held their jobs, as well as the failure of the District to dismiss those officers following the 1979 exam, we conclude that it would be inequitable and unjust to allow the District to now dismiss

those officers.

Finally, the District appeals the Board's conclusion that the FOP did not waive its right to bargain by failing to request bargaining. The District notes that the FOP never requested bargaining over Examination 3818, even though the Labor Act expressly provides that employers will be required to bargain over matters affecting wages, hours and conditions of employment *upon the request* of the employee representatives. See Ill. Rev. Stat. 1987, ch. 48, par. 1604.

In response, the Board and the FOP argue that the FOP never requested bargaining because it was unaware of the District's plan regarding the temporary officers. Respondents state that absent timely, clear notice of proposed changes in the terms and conditions of employment for employees, a union is not required to request bargaining. In this case, respondents contend, there was no timely, clear notice and, therefore, the FOP's failure to request bargaining was excused.

■ We agree with the Board's finding that the FOP's failure to request bargaining was excused because the FOP did not have notice of the unfair labor practice. As noted previously, an administrative agency's findings of fact are presumed *prima facie* true and correct and will be reversed only if they are against the manifest weight of the evidence. (*Brewington*, 161 Ill. App. 3d at 72, 513 N.E.2d at 1068.) Because there was no evidence in the record that the FOP had notice that the District would discharge those temporary officers who failed to pass Examination 3818, we cannot say that the Board's finding excusing the FOP's failure to request bargaining was against the manifest weight of the evidence.

For all of the foregoing reasons, the decision of the Board is affirmed in its entirety.

Judgment affirmed.

EGAN, P.J., and LaPORTA, J., concur.