In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-1044

MARY CASNA,

*Plaintiff-Appellant,*

*v.*

CITY OF LOVES PARK, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 04 C 50256—**Philip G. Reinhard**, *Judge.*

ARGUED OCTOBER, 30 2007—DECIDED JULY 24, 2009

Before MANION, ROVNER and SYKES, *Circuit Judges.*

ROVNER, *Circuit Judge.* Mary Casna sued the City of
Loves Park, Illinois, its mayor, and its chief of police
after she lost her job with the police department. Casna
wears hearing aids and argues that the defendants (collec-
tively, Loves Park) violated the Americans with Disability
Act by firing her when she complained about mistreat-
ment. *See* 42 U.S.C. § 12203(a). Casna also claims that
Loves Park deprived her of her job without due process,

in violation of 42 U.S.C. § 1983. The district court granted summary judgment in favor of Loves Park. We reverse.

**Background**

Casna began working for the City of Loves Park in 1996, as a deputy to the City Clerk, an elected official. In 1999 Casna asked to transfer to an administrative-assistant position in which she would report to both the Director of Community Development, Dan Jacobson, and the Director of Public Works, Bob Martin. In a resolution the city council authorized the transfer and specified that Casna's new job was, like her previous position, exempt from the civil service protections set forth in the Illinois Municipal Code, 65 ILCS 5/10-1-18(a). Casna served in her second position for four years, but her relationship with Martin was rocky. Martin told Casna repeatedly that he was unhappy with her performance and related that fact to Mayor Darryl Lindberg. Casna complained about Martin to an alderman, which perturbed the Mayor, who believed that Casna had violated the City's chain of command. In March 2003 the Mayor and the Chief of Police, Patrick Carrigan, agreed to transfer Casna to a temporary position as a police clerk, so that the City could evaluate her performance without the distractions of her conflict with Martin. The temporary transfer was to last for at least six months.

Casna suffers a hearing impairment resulting from chemotherapy and wears aids in both ears. This was not, apparently, a source of the friction with Martin, but it became an issue at the police department, where Kay

Elliot, the Chief's secretary, was Casna's immediate supervisor. Elliot kept a log in which she recorded Casna's performance, and her comments were rarely favorable. Elliot noted that Casna often came in late because of obligations to her part-time job, and that she complained that the duties now assigned her as a police clerk were beneath her. Elliot also recorded that Casna took a long time to complete routine tasks and gossiped about co-workers.

The tension between Casna and Elliot came to a head in June 2003, two months into Casna's temporary appointment with the police department. On June 2, at around 4:45 p.m., Elliot put a stack of police reports on Casna's desk. Although Elliot initially maintained that she told Casna that the papers ought to be filed before the close of business at 5 p.m., she acknowledged at her deposition that she never said anything of the sort and further admitted that office protocol did not demand that reports be filed before 5 p.m. Nonetheless, Elliot returned minutes later and expressed her disappointment that Casna had not yet completed the task.

Casna sought out Elliot the following morning to apologize for not filing the reports immediately, explaining that she had not heard Elliot make that request. Elliot knew that Casna had a hearing impairment, but she also had seen Casna listening to music at her desk once and was frustrated by what she perceived as inconsistencies in Casna's abilities; consequently, she asked Casna to explain specifically what she could and could not hear. When Casna was finished, Elliot snapped, "How can you

work if you cannot hear?" Casna, who testified that she felt threatened by this comment, countered, "Aren't you being discriminatory?" Taken aback, Elliot refused to speak further with Casna and hurried off to consult with Chief Carrigan, who instructed her to prepare a written evaluation of Casna. Elliot testified that this was the first time that she had ever conducted a written evaluation of a subordinate during the subordinate's first year on the job, and that she had never evaluated a probationary employee before the full six months were up.

The following day Chief Carrigan wrote to Mayor Lindberg, recommending that the City terminate Casna's employment because the evaluation that Elliot conducted the previous day, after her tussle with Casna, suggested that Casna was incapable of meeting the police department's standards. The Mayor fired Casna three business days later.

After exhausting her administrative remedies, Casna sued the City, the Mayor, and the Police Chief, claiming that she had been fired in retaliation for her complaints of discrimination, *see* 42 U.S.C. § 12203(a), and that Loves Park had violated the Due Process Clause by discharging her without the opportunity to be heard guaranteed by state law, *see* 65 ILCS 5/10-1-18(a). Loves Park moved for summary judgment, arguing among other things that each of Casna's jobs were exempt from civil service protections and thus did not constitute a property interest. Loves Park did not address Casna's retaliation claim until its reply memorandum, in which it countered Casna's assertion, in her memorandum in opposition

to summary judgment, that her retaliation claim merited trial.

The district court granted summary judgment on the due process claim. It reasoned that Loves Park had not followed civil service requirements in appointing Casna to her second and third jobs; thus, she should not enjoy civil service protection in those jobs and, without that, no process was due. The district court also granted summary judgment on the retaliation claim, explaining that Casna had not engaged in a statutorily protected activity and was already a candidate for dismissal because she was not meeting her employer's expectations.

**Analysis**

At the outset we note our dissatisfaction with the parties' briefs. Federal Rule of Appellate Procedure 28(a)(7), incorporated for an appellee's brief by FED. R. APP. P. 28(b), requires that a brief include a "statement of facts relevant to the issues submitted for review with appropriate references to the record." Likewise, FED. R. APP. P. 28(a)(9)(A) states that the argument section of a brief must contain "citations to the authorities and parts of the record on which the [party] relies." But Loves Park's brief, over the course of twenty-two pages, provides precisely *two* citations for factual assertions, and those two cites, which are to deposition exhibits, do not specify page numbers in the record, as required by CIR. R. 28(c). Loves Park explains generally that it relies on its Local Rule 56.1 Statement of Facts and the district court's memorandum opinion, but it does not tell us where in

those documents we may find specific facts. This makes it impossible to verify factual assertions, many of which are incendiary and inappropriately argumentative. Because Loves Park violated Rule 28, we strike its "fact" section and all portions of the argument section that rely on unsupported facts. FED. R. APP. P. 28(a)(7); *see also* FED. R. APP. P. 28(e); CIR. R. 28(c); *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 754 n.1 (7th Cir. 2006); *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1001 (7th Cir. 2004) (where party fails to cite the record, "we will not root through the hundreds of documents and thousands of pages that make up the record here to make his case for him."); *L.S.F. Transp., Inc. v. N.L.R.B.*, 282 F.3d 972, 975 n.1 (7th Cir. 2002) ("We further caution counsel that violations of Fed. R. App. P. 28(a)(7) and Circuit Rule 28(c) in the future very well could lead to the brief being stricken, summary affirmance, together with other sanctions."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in" the record.)

Casna deserves some blame as well. Like Loves Park, she flouts the appellate and circuit rules by failing to cite to pages in the record. But her brief, at least, connects factual assertions to specific items in her Local Rule 56.1 statement; those entries, in turn, correspond to appropriate record cites. We are mystified why Casna did not simply insert those record citations into her brief in place of the citations to the Local Rule 56.1 statement, and we emphasize that this breaches our rules. *See* FED. R. APP. P. 28(e); CIR. R. 28(c). Nonetheless, because Casna provided us with something to work with, we decline to strike the equivalent sections of her brief.

On to the merits. We review the district court's grant of summary judgment de novo, construing all facts and reasonable inferences in the light most favorable to Casna, the nonmoving party. *See Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 544-45 (7th Cir. 2008). We will affirm if the evidence at summary judgment establishes that there is no genuine issue of material fact and that Loves Park is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).

To establish a due process claim, Casna must first demonstrate that she had a constitutionally protected property interest in her employment with Loves Park. *See Akande v. Grounds*, 555 F.3d 586, 590 (7th Cir. 2009); *Allen v. Martin*, 460 F.3d 939, 946 (7th Cir. 2006). That determination is grounded in Illinois law. *Akande*, 555 F.3d at 590; *Rujawitz v. Martin*, 561 F.3d 685, 688 (7th Cir. 2009). Casna must show that she had a legitimate expectation of continued employment by pointing to specific statutory or contractual language that limits the discretion of Loves Park to discharge her. *See Moss v. Martin*, 473 F.3d 694, 700 (7th Cir. 2007) (citing *Krecek v. Bd. of Police Comm'rs of La Grange Park*, 646 N.E.2d 1314, 1318 (1995)). To establish her legitimate expectation of continued employment, Casna relies on the following provision of Illinois law, which restricts the ability of municipalities to discharge civil service employees, unless for cause:

> Except as hereinafter provided in this Section, no officer or employee in the classified civil service of any municipality who is appointed under the rules and

after examination, may be removed or discharged, or suspended for a period of more than 30 days, except for cause upon written charges and after an opportunity to be heard in [her] own defense.

65 ILCS 5/10-1-18(a). We have previously held that a similar provision, 65 ILCS 5/10-1-18.1, applicable to employees of cities with population greater than 500,000 (i.e., Chicago), creates a property interest in continued employment. *See Hudson v. City of Chicago*, 374 F.3d 554, 559 (7th Cir. 2004). Loves Park agrees with Casna that the provision on which she relies generally gives local employees a property interest in their jobs. Based on this agreement, we have no reason in this case to decide otherwise.

The Illinois Municipal Code, however, exempts certain categories of municipal employees from civil service classification, *see* 65 ILCS 5/10-1-17, and the parties devote their energy to arguing whether Casna's various positions were exempt. If they were, Loves Park maintains, it could transfer and discharge her at will. There is no question that Casna's first city appointment, as deputy city clerk, was exempt. Her superior was an elected official, and "one deputy and one private secretary of each of the elected municipal officials and the municipal manager" are exempt from the civil service. *See id.* Loves Park was therefore free to reassign Casna to her second position, the shared administrative assistant to two heads of major departments.

Loves Park argues that Casna's job as administrative assistant was also exempt because the city council resolu-

tion appointing her to that position specified that it would be exempt. But a city council cannot override the civil service provisions of the Illinois Municipal Code, so we look to that Code to determine whether Casna's position was exempt. *See Charles v. Wilson*, 201 N.E.2d 627, 631 (Ill. App. 1964) (citing *People ex rel. Akin v. Kipley*, 49 N.E. 229, 244 (Ill. 1897)). It was not. Only the municipal manager and *elected* officials may have exempt assistants, 65 ILCS 5/10-1-17, yet the record shows that the Directors of Community Development and Public Works—unlike Casna's previous boss, the City Clerk—are appointed by the city council.

Loves Park also argues that Casna's final position with the City, her temporary appointment to the police department, is exempt, so the City, therefore, could fire Casna from that position at will. Generally, a municipality need not follow any process before discharging a temporary employee. *See Levin v. Civil Serv. Comm'n of Cook County*, 288 N.E.2d 97, 100 (Ill. 1972). And the Code applies explicitly only to discharge, removal, and suspension for a period of more than thirty days; it says nothing about the process that is due when an employee is transferred from a civil service job to another, non-classified, position. But municipalities may not reassign civil service employees, in disregard of their due-process protections, to temporary positions that lack such safeguards, and then fire them from *both* jobs without a hearing. To use a temporary assignment to ignore civil service protections that apply to the original assignment would impermissibly eviscerate the protections that state law has adopted.

The district court ruled that Casna did not enjoy civil service protections for a separate reason: because she was not appointed under the elaborate procedures required for civil service positions, including the civil service examination. This argument has some appeal—often one has to take the bitter (the restrictions that limit who is appointed) with the sweet (the protections for those appointed). *See, e.g., Bd. of Educ. of Oak Park & River Forest High Sch. Dist. No. 200 v. Kelly E.,* 207 F.3d 931, 935 (7th Cir. 2000). Moreover, the civil service safeguards generally apply only to an "officer or employee in the classified civil service of any municipality *who is appointed under the rules and after examination,*" 65 ILCS 5/10-1-18(a) (emphasis added), and it is undisputed that Casna was not appointed under the rules or after examination.

But Loves Park is not entitled to benefit from this general rule here. The city council chose to pass a resolution *wrongly* purporting to designate her position exempt. By so doing, Loves Park announced that it was not necessary for Casna to follow the procedures for civil service jobs. Having made that determination, Loves Park has disclaimed any reliance on the absence of those civil service procedures when considering whether Casna is covered by civil service protections. *See Forest Pres. Dist. of Cook County v. Ill. Local Labor Relations Bd.,* 546 N.E.2d 675, 681 (Ill. App. 1989) (holding municipal corporation estopped from applying civil service examination requirement against employees after corporation suggested requirement did not apply to them); *Feiler v. Covenant Med. Ctr. of Champaign-Urbana,* 598 N.E.2d 376,

379 (Ill. App. 1992) ("it is well established that the doctrine of equitable estoppel can be asserted against a municipality"); *Bank of Pawnee v. Joslin*, 521 N.E.2d 1177, 1185 (Ill. App. 1989).

We conclude that Casna had a property interest in continuing employment and that Loves Park deprived her of it without a hearing. She is entitled to proceed to trial on her due-process claim to establish, if she can, any damages arising from the absence of a hearing. *See Carey v. Piphus*, 435 U.S. 247, 267 (1978); *Lalvani v. Cook County*, 396 F.3d 911, 916 (7th Cir. 2005). If the lack of a hearing did not cause Casna any pecuniary harm—that is, if her termination was nonetheless justified on the merits (a matter we do not decide today)—Casna may recover for her constitutional injury only nominal damages not to exceed one dollar. *See Carey*, 435 U.S. at 267.

We now turn to Casna's retaliation claim. The anti-retaliation provision of the ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To establish a case of retaliation under the direct method of proof, a plaintiff must show (1) she engaged in a statutorily protected activity; (2) she suffered an adverse action; and (3) a causal connection between the two. *Squibb v. Mem. Med. Ctr.*, 497 F.3d 775, 786 (7th Cir. 2007); *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 758 (7th Cir. 2006). Casna argued that her volley, "Aren't

you being discriminatory?," was a protected activity. The district judge disagreed, citing *Durkin v. City of Chicago*, 341 F.3d 606, 615 (7th Cir. 2003), for the proposition that "[t]o the extent plaintiff's question to Elliot can be construed as a complaint, it is not a formal one and on these facts is inadequate to be found to be statutorily protected activity." The district court also noted that Casna had not shown a causal connection and that, for purposes of the indirect method, she had not shown that she was meeting her employer's expectations.[1]

*Durkin* was a Title VII case where the plaintiff ignored formal company procedures for presenting sexual harassment grievances. We pause here to note that the anti-retaliation provision of the ADA, 42 U.S.C. § 12203(a), uses similar language to that in Title VII, 42 U.S.C. § 2000e-3(a); thus, courts look to Title VII retaliation cases for guidance in deciding retaliation cases under the ADA. *See Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir. 1998); *Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005) (collecting cases from the eleven other

---

[1] The district court granted summary judgment to Loves Park on the retaliation claim even though Loves Park did not request summary judgment on that count in its opening brief in support of summary judgment. The non-moving party should always have a chance to respond to the movant's arguments, *see Edwards v. Honeywell*, 960 F.2d 673. 674 (7th Cir. 1992), which here Loves Park raised for the first time in its reply brief. Loves Park's failure to include the retaliation claim in its opening brief deprived Casna of that opportunity. We reverse, however, on other grounds.

geographic circuits). In *Phelan v. Cook County*, 463 F.3d 773 (7th Cir. 2006), another Title VII case, we distinguished *Durkin*, holding that informal complaints about sexual harassment from coworkers can provide an employer with sufficient notice to establish employer liability, even if the employee's alerts did not technically comply with the company's notification procedures. *Id.* at 786. Other circuits have applied similar reasoning to retaliation claims, holding that statutorily protected activity "can range from filing formal charges *to voicing informal complaints to superiors*." *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004) (emphasis added); *see Shannon v. Bellsouth Commc'ns, Inc.*, 292 F.3d 712, 716 n.2 (11th Cir. 2002); *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1213 (10th Cir. 2008). We think this an appropriate application of *Phelan* and agree that an informal complaint may constitute protected activity for purposes of retaliation claims.

The district court also thought that Casna could not establish a causal link between her protected activity and her firing because her ongoing failure to meet the City's expectations had already made her a candidate for termination. Casna's failings as an employee may have prompted the discharge, but so may have Loves Park's intolerance of her complaint about discrimination. In this case the Chief recommended that Loves Park fire Casna the very day after she complained to Elliot about her hostility to Casna's hearing impairment. Suspicious timing is rarely enough to create a triable issue, *see Tomanovich v. City of Indianapolis*, 457 F.3d 656, 665 (7th Cir. 2006), but in an extreme case like this, where the

adverse impact comes "on the heels" of the protected activity, it is, *see McClendon v. Ind. Sugars*, 108 F.3d 789, 796 (7th Cir. 1997) (quoting *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1458 (7th Cir. 1994)). A fact-finder must determine whether the Chief initiated Casna's discharge because she had just protested Elliot's possibly discriminatory attitude or because her work performance was inadequate.

Accordingly, we REVERSE the district court judgment and REMAND for further proceedings.