In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3428

GARY W. HELMAN,

*Plaintiff-Appellant,*

*v.*

BRUCE DUHAIME, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:10-cv-00486-WCL-CAN — **William C. Lee**, *Judge.*

ARGUED MARCH 1, 2013 — DECIDED FEBRUARY 6, 2014

Before ROVNER, WILLIAMS, and HAMILTON, *Circuit Judges.*

ROVNER, *Circuit Judge.* Gary W. Helman brought an action
under 42 U.S.C. § 1983, alleging that the defendants, law
enforcement officers, violated his constitutional rights under
the Fourth and Fourteenth Amendments by their conduct in
executing an arrest warrant for him on April 9, 2009. In the
course of events, Helman was shot multiple times, and he
asserts that the defendants used excessive force. The district

court granted summary judgment in favor of the defendants, and Helman appeals.

Summary judgment is appropriate only if there is no genuine issue of material fact that could result in a favorable judgment to Helman. We take all facts and reasonable inferences in the light most favorable to Helman as the non-moving party, and review the decision of the district court *de novo*. *Casna v. City of Loves Park,* 574 F.3d 420, 424 (7th Cir. 2009).

On April 9, 2009, members of the Indiana State Police arrived at Helman's residence to execute warrants for his arrest. They spoke with his brother Michael Helman, and explained that they were there to arrest Helman, who was in the home with his mother. The officers hoped to negotiate a peaceful surrender. Michael Helman then spoke with Helman in the home before departing the residence. Around noon, Helman exited the home and spoke with United States Marshal Brent Cooper and Sergeant Duhaime concerning lawsuits that Helman had filed in federal court. In response to the officers' questions as to whether he was armed, Helman pulled up his shirt to reveal that he was wearing a .45 caliber semi-automatic handgun. Helman then handed paperwork to the officers and returned to his residence. The officers informed the other members of the Indiana State Police that Helman was carrying a loaded firearm.

A stalemate ensued for approximately 6 hours, after which time Helman again exited the house to meet with law enforcement officers. This time, as Helman walked into his backyard carrying water and a coffee cup in his hands, the Indiana State Police Emergency Response Team (the ERT) moved in behind

Helman to prevent him from retreating again into his home. The ERT then activated a flash bang device to distract Helman. At this point, the sequence of events becomes less clear. According to the district court opinion, Helman turned in response to the commotion caused by the flash bang device, and upon seeing the ERT, attempted to draw his handgun. At that time, the officers fired shots at Helman, hitting him multiple times. Those facts, however, were identified by the district court as those supported by the defendants' evidence of record. But on a summary judgment motion by the defendants, we must take the facts and reasonable inferences in the light most favorable to the plaintiff. Helman asserts that when the flash bang device detonated, he turned but he did not reach for his weapon until after that device went off and shots were fired at him.

Subsequently, Helman was charged in state court with Resisting Law Enforcement under Ind. Code § 35-44-3-3.[1] Although resisting law enforcement is normally a Class A misdemeanor, Helman's use of a deadly weapon elevated it to a Class D felony. Helman pled guilty to that charge, acknowledging at the plea hearing that he "did knowingly or intentionally forcibly resist, obstruct or interfere with a law enforcement officer while the officer was lawfully engaged in the execution of the officer's duties and while committing said offense … attempted to draw a deadly weapon."

---

[1] We use this version as it is the one that was in effect at the time of his offense. As part of a comprehensive recodification of Indiana law, that provision was repealed, and the current statute containing this language can be found at IC 35-44.1-3-1(a).

Helman now argues that the defendant officers violated his rights under the Fourth and Fourteenth Amendments of the Constitution in using excessive force against him, and has sued under 42 U.S.C. § 1983 for redress. He asserts that as a result of their actions, he incurred medical and hospital expenses and suffered injuries that are permanently disabling.

The first issue that we must address is the defendants' argument that Helman is precluded from bringing this § 1983 action under *Heck v. Humphrey*, 512 U.S. 477, 486 (1994). In *Heck*, the Court held that a district court must dismiss a § 1983 action if a judgment in favor of the plaintiff in that § 1983 action would necessarily imply the invalidity of his criminal conviction or sentence. *Id.* at 487; *Skinner v. Switzer*, 131 S. Ct. 1289, 1298 (2011). But if the claim, even if successful, will *not* demonstrate the invalidity of the conviction, then the § 1983 action should be allowed to proceed. *Id.*

In *Evans v. Poskon*, 603 F.3d 362 (7th Cir. 2010), we addressed the ability of a plaintiff to proceed on a § 1983 excessive force claim where that plaintiff had been convicted of resisting arrest, and held that the plaintiff can only proceed to the extent that the facts underlying the excessive force claim are not inconsistent with the essential facts supporting the conviction. The police in that case burst into Evans' home because they believed he was attempting to strangle someone, and arrested him after a struggle. He was convicted of attempted murder and resisting arrest. *Id.* at 363. Evans subsequently brought an action under § 1983 alleging that the officers violated the Fourth Amendment by using excessive force during and after the arrest. We held that Evans could not maintain a § 1983 action premised on the claim that he did not

resist being taken into custody, but could proceed on claims that the police used excessive force in effecting custody or after doing so. *Id.* at 364; see also *Burd v. Sessler*, 702 F.3d 429, 433–35 (7th Cir. 2012); *Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011). The latter claims were not inconsistent with his conviction for resisting arrest. Therefore, in considering whether *Heck* requires dismissal, we must consider the factual basis of the claim and determine whether it necessarily implies the invalidity of Helman's conviction. To the extent that factual allegations do not do so, Helman may proceed under § 1983.

In this case, the only viable theory of § 1983 liability is Helman's theory that he did not attempt to draw his weapon until after shots were fired at him. That theory is inconsistent with his conviction for Resisting Law Enforcement under Ind. Code § 35-44-3-3.

We begin by considering that criminal provision. The language of Ind. Code § 35-44-3-3 provides that "[a] person who knowingly or intentionally … forcibly resists, obstructs, or interferes with a law enforcement officer … while the officer is lawfully engaged in the execution of [his] duties … commits resisting law enforcement … ." Cases interpreting that provision have held that the officer is not "lawfully engaged in the performance of his duties" if he is employing excessive force, and therefore a person who reasonably resists that force cannot be convicted under that provision. *Shoultz v. State of Indiana*, 735 N.E.2d 818, 823–25 (Ind. App. 2000). Accordingly, Helman would not be criminally liable under that statute if he attempted to draw his weapon in response to excessive force. It follows, then, that the criminal conviction under that statute necessarily entails a finding that at the time he drew his

weapon, he did not face the use of excessive force by the officers.

Helman's § 1983 action, however, is premised upon the assertion that he drew his weapon only in response to the officers' use of excessive force. Specifically, he asserts that when the flash bang device detonated, he had a cup of coffee and a bottle of water in his hands. He maintains that he did not reach for his gun until after the officers began firing at him, and that they fired at him only because he possessed a weapon, not in response to any action by him in reaching for it. In fact, he argues to this court that the transcript of his guilty plea does not contain any admission that he reached for his gun prior to being shot.

The problem is that Helman's version of the facts would necessarily imply the invalidity of his state court conviction for resisting law enforcement. It would have been objectively unreasonable for officers to open fire on a person who was not reaching for a weapon or otherwise acting in a threatening manner, and therefore the officers would have been employing excessive force if they did so. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989) (the Fourth Amendment reasonableness inquiry is an objective one, determined in light of the facts and circumstances confronting the officers, without regard to their underlying intent or motivation); *Common v. City of Chicago,* 661 F.3d 940, 943 (7th Cir. 2011). If Helman attempted to access the gun only after the officers began firing at him, then Helman would have been attempting to draw a deadly weapon in response to excessive force. Accordingly, under *Heck,* Helman may not pursue a § 1983 claim premised upon that factual scenario.

Helman is left, then, with an argument under § 1983 that the officers violated his Fourth Amendment rights in shooting him when he was reaching for his firearm. That claim, however, cannot survive summary judgment because such a response is objectively reasonable. In fact, Helman does not even argue that he could pursue a § 1983 claim under such scenario. The district court properly held that Helman was precluded by his conviction from pursuing this § 1983 action. The decision of the district court is AFFIRMED.