**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 13, 2005
Decided April 25, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 04-2783

| | |
|---|---|
| RUTH A. SERINO,<br>        *Plaintiff-Appellant,* | Appeal from the United States District<br>Court for the Northern District of<br>Illinois, Eastern Division |
|        *v.* | No. 01 C 8946 |
| JOHN E. POTTER,<br>        *Defendant-Appellee.* | John C. O'Meara,<br>*Judge.* |

**O R D E R**

Ruth Serino pursued claims of disability discrimination and retaliation against the United States Postal Service ("USPS") under the Rehabilitation Act of 1973, *see* 29 U.S.C. § 701 et seq. After Serino presented her case-in-chief to a jury, the district court granted the USPS's motion for judgment as a matter of law, and Serino appeals. We affirm.

Serino worked as a mail handler and letter carrier from 1968 through 1975, when a work-related injury required her to assume the position of distribution clerk at the Lock Box 80 postal unit. As a distribution clerk she was required to pick up trays of mail, sort the mail at a work station, and then place the mail in customer-

accessible lock boxes. In 1991 she was diagnosed with deep vein thrombosis (the formation of blood clots in a deep vein) and peroneal palsy (the loss of the capacity to lift the foot). Serino left work and received workers' compensation benefits for a year in 1992 and 1993. She returned to work but again left in December 1994—this time indefinitely. During this second prolonged absence, the USPS notified her that the union contract allowed only a one-year leave of absence before her job became eligible for a replacement worker.

Threatened with the loss of her job to a replacement worker, Serino returned to work in November 1995, with the permission of her doctor. In January and April 1996, though, she was hospitalized because of a stroke and phlebitis (inflamation of a vein) in her right leg, respectively. When she returned to work, Serino submitted a doctor's letter describing the accommodations required by her conditions, including using a high-backed chair (for back support), walking every hour, and avoiding standing in place for prolonged periods. In response the USPS assigned her to the "Nixie" unit, which was in the same building as the Lock Box 80 unit, for one month. This "light-duty" unit allowed injured workers to complete a full day's work by sitting at a table and processing damaged mail, which the USPS deemed a simple task. Serino, however, objected to the transfer and filed an Equal Employment Opportunity ("EEO") complaint of discrimination. She stayed at the Nixie unit for less than one week and returned to her former position at the Lock Box 80 unit after she filed her complaint.

In January 1997 Serino filed an application for disability retirement, reporting that her ailments had left her unable to perform her job. She acknowledged, however, that the USPS had accommodated her disability "by complying with" her doctor's recommendation that they provide a high-backed chair and limit the amount of time she spent standing, walking, and lifting. Serino stopped working in February 1997 after receiving a doctor's letter stating that she could no longer continue. The USPS granted her disability retirement effective April 30, 1997.

More than four years later, in November 2001, Serino sued. Though initially pro se, she later retained present counsel, who alleged in a second amended complaint that the USPS discriminated against Serino on the basis of a disability when it failed to accommodate her conditions for two weeks in 1996 and then retaliated by transferring her to the Nixie unit when she complained about the lack of accommodation. Among other relief she asked for reinstatement and back pay for the entire period from the time of the alleged discrimination in 1996 until "the present."

The USPS did not move for summary judgment, and the case proceeded to trial. Serino presented testimony from five witnesses (herself, her husband, and

three former supervisors).  She also introduced three medical notes she provided to the USPS in 1996 and the USPS memo placing her on light duty at the Nixie unit. The USPS introduced her 1997 application for disability retirement, in which she represented that her ailments prevented her from walking or standing for more than a few minutes, completing a day's work, or performing her duties.

Serino testified that, although the USPS attempted to accommodate her disability, it failed to do so adequately.   She testified that she would often return from lunch to find her chair missing, but she offered no evidence concerning who might have removed her chair.  She also testified that, with the appropriate accommodations, she could perform her job, but she was unable to explain why she felt disabled to the point of requesting disability retirement (except to say that she was somehow "harassed" into requesting disability retirement). Regarding her one-week transfer to the Nixie unit, Serino testified that she gave her supervisors a doctor's note describing her necessary accommodations following her return to work after the stroke.  That note, her USPS supervisors testified, was why she was sent to the light-duty Nixie unit.  Serino further admitted that she understood the transfer was intended to accommodate her disability, but she insisted that the change in job description was a form of discrimination because other disabled and injured workers were permitted to remain at the Lock Box 80 unit rather than being transferred to the Nixie unit.   Finally, she stated that, while at the Nixie unit, she suffered retaliation in that she was not given an adequate chair or supplies, such as tape and a glue stick.

After Serino presented her witnesses, the USPS moved for judgment as a matter of law under Federal Rule of Civil Procedure 50.  The USPS argued, primarily based on Serino's own admissions in her application for disability retirement, that she had conceded that she was unable to perform her job.  The USPS also maintained that Serino had failed to show that she suffered an adverse employment action, that similarly situated employees without a disability were treated differently, or that, for purposes of the retaliation claim, she had engaged in protected activity.

Serino responded that she was never reprimanded for poor performance, and thus must have been performing her job adequately.  She also suggested that the transfer to the Nixie unit and the loss of wages in 1995 or 1996, due to an unpaid leave of absence stemming from her disability, were adverse employment actions. Next she argued that she had complained to her supervisors that she was not being treated fairly, and that this protected activity motivated USPS supervisors to transfer her to the Nixie unit.  Finally she contended that other disabled employees working at the Lock Box 80 unit did not have their chairs taken—evidence in her mind that showed she was treated differently than similarly situated

employees—and that the chair's periodic disappearance demonstrated that the USPS's accommodation efforts were not in good faith.

The district court granted the USPS's Rule 50 motion. Though the court's ruling from the bench was not extensive, the court distilled Serino's case into the argument that she was unsatisfied with the USPS's attempts to accommodate her. The court found that there was no basis to believe the USPS intentionally denied her the chair she required, and that Serino's evidence established that the USPS made appropriate efforts to accommodate her for "a very long time."

We review the grant of judgment as a matter of law *de novo*, viewing the facts in the light most favorable to the non-movant. *See Billy-Bob Teeth, Inc. v. Novelty, Inc.*, 329 F.3d 586, 590 (7th Cir. 2003). A plaintiff establishes a prima facie case of disability discrimination under the Rehabilitation Act by proving: "(1) that she suffers from a disability as defined in the statutes; (2) that she is qualified to perform the essential functions of the job in question, with or without reasonable accommodation; and (3) that she has suffered an adverse employment action as a result of her disability."[1] *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005). The Act also incorporates the ADA's proscription of retaliation, *see* 42 U.S.C. § 12,203(a) (ADA's retaliation provision); 29 U.S.C. § 794(d) (incorporating § 12,203(a)); *Hoyt v. St. Mary's Rehab. Ctr.*, 711 F.2d 864, 867 (8th Cir. 1983) (observing that retaliation is actionable under the Rehabilitation Act); *see also Mannie v. Potter,* 394 F.3d 977, 979 (7th Cir. 2005) (addressing retaliation claim against USPS). A retaliation claim "does not depend on the success of the plaintiff's disability claim." *Guzman-Rosario v. United Postal Serv., Inc.*, 397 F.3d 6, 11 (1st Cir. 2005). Serino can show retaliation if "she engaged in a statutorily protected activity," met the USPS's "legitimate expectations," and "suffered an adverse

---

[1] The parties structured their Rule 50 arguments, and their briefs on appeal, according to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Though the framework falls away after a full trial on the merits, leaving only the question of the sufficiency of the evidence on appeal, *Filipovich v. K & R Express Sys., Inc.*, 391 F.3d 859, 863-64 (7th Cir. 2004), our review of the mid-trial grant of a Rule 50 motion is "essentially identical" to our review of a grant of summary judgment. *See Harper v. Albert*, 400 F.3d 1052, 1066 n.19 (7th Cir. 2005); *cf. Mayer v. Gary Partners & Co.*, 29 F.3d 330, 335 (7th Cir. 1994) (recognizing Supreme Court's "linking" of Rule 56 and Rule 50 standards). The *McDonnell Douglas* framework thus remains helpful in determining whether a rational jury could have found for the plaintiff, even though the parties had passed the pretrial phase. *See, e.g., Wilson v. AM Gen. Corp.*, 167 F.3d 1114, 1120 (7th Cir. 1999) (reviewing denial of defendant's Rule 50 motion after conclusion of plaintiff's case-in-chief).

employment action" as a result of engaging in the protected activity. *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005).

Here, Serino argues that the district court erred by dismissing her discrimination claim because her evidence established that she was qualified for her job in the Lock Box 80 unit and that her transfer to the Nixie unit was an adverse employment action. The parties do not dispute that Serino was disabled. Regarding her retaliation claim, she contends that she proved her transfer to the Nixie unit was in retaliation for her complaints about her treatment (complaints that she characterizes as protected activity), and that other injured or disabled employees who did not complain were allowed to remain in the Lock Box 80 unit.

Serino's claims for reinstatement and back pay fail because of her admission in her application for disability retirement that she was unable to work. In the application, Serino stated that she was "willing to work," but that she was "unable to complete a full tour of duty without becoming ill." She also stated that she was "often sent home by [sic] Medical Unit." There is some dispute as to whether her condition rendered her unable to work in November 1995, as the USPS argues, or June 1996, which is the date that Serino's supervisor noted that her "unacceptable performance" began. Construing the dispute in Serino's favor, it is nevertheless true that she was unable to perform her work by the time she left the USPS in February 1997. Moreover, her trial testimony did not provide a "sufficient explanation" to resolve the "apparent contradiction." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-07 (1999); *see Feldman v. Am. Mem. Life Ins. Co.,* 196 F.3d 783, 790-91 (7th Cir. 1999) (requiring plaintiff to resolve inconsistency between claim of complete disability for purposes of Social Security Disability Insurance and claim of qualified employee status under ADA).

The remainder of Serino's claims—to the extent that they relate to events occurring prior to June 1996—fail because she did not meet her burden of showing a prima facie case of discrimination. Serino failed to show that she suffered an adverse employment action, which is an element of both her discrimination and retaliation claims. She argues here that her transfer to the Nixie unit was such an action because it "was a significant change of her duty [from] when she was a distribution clerk." "While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996). The short duration of Serino's transfer is not relevant to the question of whether it amounted to an adverse employment action, *see Ezell v. Potter*, 400 F.3d 1041, 1049 (7th Cir. 2005) (duration of adverse employment action effects degree of damage suffered by plaintiff); *see also Molnar v. Booth*, 229 F.3d 593, 600-01 (7th Cir. 2000)*,* but her transfer—without more, such as a reduction in pay or significantly diminished working conditions—falls below the level of an adverse

employment action necessary to support a claim of discrimination or retaliation. *Cf. Washington v. Ill. Dept. of Revenue,* 420 F.3d 658, 661 (7th Cir. 2005) (discussing claim of discriminatory transfer under Title VII); *Herron v. DaimlerChrysler Corp.,* 388 F.3d 293, 301 (7th Cir. 2004). Moreover, Serino did not rebut the testimony of the USPS supervisors—her own witnesses—that the transfer was an attempt to satisfy *her* demand for accommodation of her medical conditions. Indeed, she acknowledged during her testimony that the transfer was motivated by her request for accommodation. Thus, even if the transfer could be construed as an adverse employment action, *see Sitar v. Ind. Dep't of Transp.,* 344 F.3d 720, 727 (7th Cir. 2004) ("job transfers . . . that lead to significantly diminished responsibilities and substantially changed working conditions can be retaliatory actions"), it was not a sanction motivated by her disability.

We note in closing that other elements of Serino's prima facie case are also tenuous. Regarding the protected-activity prong of the prima facie test for retaliation, Serino identified her filing of an EEO complaint as the protected activity in her opening brief. But after the USPS pointed out that this was an impossibility because she was transferred to the Nixie unit (the allegedly adverse employment action) *before* she filed the EEO complaint, Serino shifted her argument to suggest that she complained to supervisors prior to her transfer. A complaint to a supervisor may be a protected form of expression, but here there is no evidence that Serino's actions were specific enough to constitute protected activity, in the absence of a formal complaint. *See Durkin v. City of Chicago*, 341 F.3d 606, 614-15 (7th Cir. 2003). She also failed to identify any similarly situated employees from *outside* the protected class (that is, employees without a disability for purposes of the discrimination claim and employees who did not complain about disability discrimination for purposes of the retaliation claim). She argues that other disabled employees were allowed to remain at the Lock Box 80 unit and did not have their chairs removed during lunch, but there is no specific testimony regarding the identity of these employees, the nature of their duties, or their propensity to lodge complaints to show that they were similar to her in all material aspects. *See Bio v. Fed. Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005).

AFFIRMED.