In the

# United States Court of Appeals

### For the Seventh Circuit

No. 10-3381

ROBERT E. DICKERSON,

*Plaintiff-Appellant,*

*v.*

BOARD OF TRUSTEES OF
COMMUNITY COLLEGE DISTRICT NO. 522,
COUNTIES OF ST. CLAIR, MADISON, MONROE,
RANDOLPH, WASHINGTON, BOND, PERRY AND
MONTGOMERY and STATE OF ILLINOIS,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 08-CV-716—**G. Patrick Murphy,** *Judge.*

ARGUED JUNE 7, 2011—DECIDED SEPTEMBER 16, 2011

Before EASTERBROOK, *Chief Judge,* and BAUER and
WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Robert Dickerson is a part-
time janitorial custodian for a community college in
Illinois and suffers from a mental disability. He brought

this suit against his employer, alleging that he was discriminated against because of his disability in violation of the Americans with Disabilities Act.

In August of 2007 Dickerson was a part-time janitor. He applied for full-time positions and was rejected. The school evaluated Dickerson's job performance in December of 2007. He was rated "Unsatisfactory" in three of seven categories. On February 7, 2008, Dickerson filed a discrimination charge against the school with the Equal Employment Opportunity Commission (EEOC), stating that the school's failure to hire him for a full-time position was an act of unlawful discrimination.

On July 17, 2008, the school evaluated Dickerson's job performance again and decided to fire him. Dickerson filed another charge of discrimination with the EEOC, and added a retaliation claim. Later, he sued the school in federal district court, and a summary judgment motion was granted in favor of the school. Dickerson appealed.

We find that the district court was correct in granting summary judgment for the school on Dickerson's discrimination claim because the evidence in the record is insufficient to show that Dickerson was meeting his employer's legitimate employment expectations. His retaliation claim also fails because he did not point to sufficient evidence that he was performing his job satisfactorily. Therefore, we affirm.

## I. BACKGROUND

Because the defendant-appellee[1] prevailed on summary judgment, we will recount the pertinent facts in the light most favorable to the plaintiff-appellant, Robert Dickerson. According to Dickerson's psychological report that was prepared for this litigation, Dickerson is mildly mentally impaired. He has a WAIS-III Full Scale IQ of 67 (which "falls in the range of mild mental retardation"), took special education classes in high school, and has difficulty acquiring, retaining, and processing information. Although he is disqualified from certain categories of jobs and professions because of his mental disability, in 1999 he secured a position as a part-time janitor for Belleville Area Community College District 522 (District 522). With three exceptions, Dickerson's part-time tenure proceeded without recorded incident. In December of 2005, Dickerson filed a union grievance against a supervisor who issued a warning claiming that Dickerson refused to perform a work assignment. In July of 2006, Dickerson received a warning for failing

---

[1] At oral argument we ordered the parties to file supplemental briefing to clarify the number and names of defendants-appellees in this case. In their joint supplemental briefing, the parties stated that Dickerson intended, and the defendant understood, that Dickerson sued only his employer, the "Board of Trustees of Community College District No. 522, Counties of St. Clair, Madison, Monroe, Randolph, Washington, Bond, Perry and Montgomery and State of Illinois." We will refer to Dickerson's employer, who is the defendant-appellee in this case, as District 522.

to secure job-related equipment, resulting in District 522's financial loss of $459.00 to replace the equipment. And in April of 2007, Dickerson received a warning for leaving his work site without first obtaining his supervisor's permission. Dickerson applied for full-time janitor positions at District 522 in 2005 and 2006. He was not hired for the positions. In August of 2007, Dickerson again applied for full-time janitor positions with his employer school. He was not hired for any of the positions. One successful part-time applicant was told that if he wanted to be elevated to a full-time position, he should "stay away from Bobby Dickerson."

On October 17, 2007, Dickerson attended a meeting of District 522's Board of Directors and complained that he was being discriminated against because of his personal traits and a speech defect. Later he met with District 522's attorney and repeated his belief that he was being discriminated against.

On December 18, 2007, District 522 performed a written evaluation of Dickerson's work performance from November 2, 2006 to November 3, 2007. It was the first formal evaluation performed on Dickerson, and was made pursuant to a 2006 policy change by District 522 that mandated written evaluations for part-time employees. The evaluation was completed by Kenny Deffenbaugh, Assistant Director of the Physical Plant, who was Dickerson's direct supervisor, and the evaluation timeframe corresponded with Dickerson's employment anniversary, which was November 3, 1999. The evaluation form had seven categories. In each category

there were five possible ratings: Outstanding, Very Good, Good, Satisfactory, and Unsatisfactory. Dickerson was rated as Satisfactory in "Attendance & Punctuality," "Quality of Work," "Knowledge of the Work" and "Attitude." In these categories, Deffenbaugh noted that Dickerson "is consistently late for work and needs to improve"; some "jobs need to be redone because of not listening to the job instructions"; and Dickerson "does only the bare minimum to meet job requirements." Dickerson was rated "Unsatisfactory" in the categories of "Quantity of Work," "Responsibility," and "Relationships With People." In these areas, Deffenbaugh noted that Dickerson "needs constant supervision or he will wander off jobs"; and that "[m]any times when Bobby is required to work with other staff members, they will request someone else to work with. He leaves the area and puts more burden on them." Overall, Dickerson's job performance was rated as "Unsatisfactory": "Bobby takes no initiative to be a leader or a positive employee to try to meet job requirements . . . . Bobby is the type of employee that will take a lot of my time as a supervisor just to make sure he is still working." When he was presented with the evaluation, Dickerson disagreed with it and refused to sign it. Later he signed an affidavit declaring that his attendance and punctuality were "Outstanding" during the relevant time periods, and that he was "at least good" in each of the remaining evaluation categories. In January of 2008, Dickerson filed a grievance with his union, alleging that District 522 was discriminating against him because of his union activities, and that his poor written evaluation was a form of discriminatory, unjust discipline.

On February 7, 2008, Dickerson filed a charge of discrimination with the EEOC. He alleged that District 522 failed to promote him to a full-time janitor position because it believed he was mentally disabled. During the spring of 2008, some time after he filed his EEOC charge, Dickerson approached Larry Friederich, who was District 522's Vice President of Human Resources. Dickerson asked Friederich what he should be doing differently to be promoted to a full-time position. Friederich's response included something along the lines of "you are suing your employer and you should not be suing your employer." Later, in deposition, Friederich admitted that he gave Dickerson this "common sense" advice, and that he knew of Dickerson's EEOC charge when he gave it.

On July 17, 2008, Deffenbaugh performed a follow-up evaluation of Dickerson's work performance; it covered the time period of December 19, 2007 through July 16, 2008. He noted that Dickerson showed improvement in securing equipment, but that he had not improved on being a team worker, communicating with his supervisor before leaving a task, or completing his share of the workload instead of shifting responsibilities to his co-workers. He also noted that Dickerson had been verbally warned about his unsatisfactory performance several times, and that he (Deffenbaugh) had personally talked to Dickerson on "many occasions" about what he needed to do to be a better employee. Deffenbaugh concluded that Dickerson had made insufficient progress in correcting the problems noted in his December 2007 evaluation, and that his performance remained "Unsatis-

factory." He recommended that Dickerson be fired because of poor performance. Indeed, District 522 fired Dickerson, effective September 10, 2008. Later, in a response to an interrogatory, District 522 admitted that the people involved in its decision to fire Dickerson included Deffenbaugh and Friederich.

Dickerson filed a union grievance over his termination. An arbitrator ruled that Dickerson be reinstated to his part-time position because District 522 had violated the parties' collective bargaining agreement by failing to employ progressive discipline in correcting Dickerson's behavior. District 522 did in fact reinstate Dickerson to his part-time position. Dickerson also filed another EEOC charge. He alleged that he had been fired in retaliation for filing his charge of discrimination against his employer, and that the firing itself was a further act of unlawful discrimination by his employer. He then brought a civil suit against District 522 in federal district court, alleging that the school broke the law when it did not award him a full-time janitorial position, gave him negative evaluations, and fired him. The district court granted summary judgment in favor of District 522, and Dickerson appealed to our court. At issue before us is whether the district court erred in granting summary judgment in favor of District 522.

## II. ANALYSIS

Dickerson asserts that he was discriminated against and terminated in violation of the Americans with Disabilities Act (ADA). The district court dismissed

Dickerson's claims under summary judgment. We review the court's grant of summary judgment de novo. *Moore v. Vital Prods. Inc.*, 641 F.3d 253, 256 (7th Cir. 2011). We construe all facts and draw all reasonable inferences in favor of Dickerson. *Id.* Summary judgment is appropriate if the record shows there is no genuine issue of material fact and District 522 is entitled to judgment as a matter of law. *Id.*; Fed. R. Civ. P. 56(a). Summary judgment in favor of District 522 was appropriate here.

**A. Discrimination Claims Under the ADA**

The ADA prohibits employers from discriminating against disabled employees because of their disability. 42 U.S.C. § 12112(a). Congress enacted the ADA "against a backdrop of pervasive unequal treatment . . . including systematic deprivations of fundamental rights" that people with disabilities were forced to endure. *Tennessee v. Lane*, 541 U.S. 509, 524 (2004) (examining Title II of the ADA). As the motivation and implementation behind the ADA was similar to that of the Civil Rights Act of 1964, courts often look to the Civil Rights Act for ADA guidance. *See Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 959 (7th Cir. 2010); *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009); *Timmons v. Gen. Motors Corp.*, 469 F.3d 1122, 1128 (7th Cir. 2006).

A disability is defined under the ADA as: (A) a physical or mental impairment that substantially limits one or more major life activities of the individual; (B) a record of such an impairment; or (C) being regarded as

having such an impairment. 42 U.S.C. § 12102(1). The type of "major life activities" that must be substantially limited to fall under the purview of the ADA include, but are not limited to: caring for oneself, learning, reading, concentrating, thinking, communicating, and working. 42 U.S.C. § 12102(2). Viewing the facts of this case in the light most favorable to Dickerson, his mental impairments, including his recorded IQ of 67, substantially limit his major life activities such that he qualifies as a disabled person under the ADA.

A disabled plaintiff can prove disability discrimination by using either the direct or indirect method of proof. *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). Under the direct method, a plaintiff can present either direct or circumstantial evidence to meet its burden. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004); *Bekker v. Humana Health Plan, Inc.*, 229 F.3d 662, 670 (7th Cir. 2000). Direct evidence requires an admission by the decision maker that his or her actions were based upon the prohibited animus. *Buie*, 366 F.3d at 503. However, employers are usually careful not to offer overt remarks revealing discrimination, and circumstantial evidence that allows a jury to infer intentional discrimination is also permissible. *Id.*; *Luster v. Ill. Dep't of Corr.*, No. 09-4066, 2011 WL 2857262, at *5 (7th Cir. July 19, 2011). The type of circumstantial evidence that a plaintiff may produce to survive summary judgment includes: (1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly

situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action. *Diaz v. Kraft Foods Global, Inc.*, No. 10-3073, 2011 WL 3437028, at *4 (7th Cir. Aug. 8, 2011); *Burnell v. Gates Rubber Co.*, 647 F.3d 704, 708 (7th Cir. 2011).

Under the indirect method of proof, a plaintiff must first establish a *prima facie* case of discrimination by showing that (1) he is disabled under the ADA; (2) he was meeting his employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees without a disability were treated more favorably. *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 601 (7th Cir. 2009); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) (establishing standard under Title VII of Civil Rights Act). Once a plaintiff has established a *prima facie* case, the defendant must identify a legitimate, non-discriminatory reason for its employment decision. *Rooney v. Koch Air, LLC*, 410 F.3d 376, 381 (7th Cir. 2005). If the defendant satisfies this requirement, the plaintiff must then prove by a preponderance of the evidence that the defendant's reasons are pretextual. *Lloyd*, 552 F.3d at 601.

## B. Retaliation Claims Under the ADA

The ADA prohibits employers from retaliating against employees who assert their right under the act to be free from discrimination. 42 U.S.C. § 12203(a). Employers are

forbidden from retaliating against employees who raise ADA claims regardless of whether the initial claims of discrimination are meritless. *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 786 (7th Cir. 2007). As in the discrimination context, a plaintiff can establish a valid case of retaliation using either the direct or indirect method of proof. *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1117 (7th Cir. 2001). To establish a case of retaliation under the direct method of proof, a plaintiff must show (1) he engaged in a statutorily protected activity; (2) he suffered an adverse action; and (3) a causal connection between the two. *Casna*, 574 F.3d at 426. Plaintiffs can also elect to use the indirect, burden-shifting method for retaliation claims, under which the plaintiff must demonstrate that he (1) engaged in protected activity; (2) was performing his job satisfactorily; and (3) was singled out for an adverse employment action that similarly situated employees who did not engage in protected activity did not suffer. *Lloyd*, 552 F.3d at 601. Once a plaintiff satisfies his initial burden, the burden then shifts to the defendant to present a non-invidious reason for the adverse employment action. If the defendant meets this burden, the plaintiff must then demonstrate that the defendant's proffered reason was pretextual. *See Jasmantas v. Subaru-Isuzu Auto., Inc.*, 139 F.3d 1155, 1157 (7th Cir. 1998).

## C. Summary Judgment Properly Granted for District 522

We analyze Dickerson's discrimination and retaliation claims together because they fail for the same reason.

Dickerson argues that District 522 discriminated against him by refusing to promote him, giving him adverse job evaluations, and firing him. He also argues that the adverse job evaluations and termination constituted illegal retaliation in response to his protected activity in complaining about discriminatory acts and filing a discrimination charge.

We consider first whether Dickerson's claims survive summary judgment under the direct method of proof, and conclude that they do not. As we noted earlier, Dickerson is a disabled person entitled to protection under the ADA. And his acts of complaining about alleged discrimination to District 522's Board of Directors and its attorney, and his filing of an EEOC charge of discrimination, are protected under the ADA. In further support of his claims under the direct method of proof, Dickerson points to the statement made to him by the Vice President of Human Resources, Friederich, that he should not be suing his employer if he wanted to be promoted. This statement was imprudent. In its answers to Dickerson's interrogatories, District 522 admitted that Friederich was involved in the decision to fire Dickerson. And, to the extent that Friederich's statement reveals a discriminatory intent on Friederich's part, it is attributable to District 522. *See Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1194 (2011) (if a supervisor performs a discriminatory act that is intended to cause an adverse employment action, and act is proximate cause of ultimate adverse action, then employer is liable).

However, the timing of Friederich's statement, even though timing is "often an important evidentiary ally of

the plaintiff," *Lang v. Illinois Dep't of Children and Family Servs.*, 361 F.3d 416, 419 (7th Cir. 2004), in this case precludes its sufficiency in allowing Dickerson's claim to survive summary judgment under the direct method of proof. Friederich's statement lends little support to Dickerson's discrimination claim because it came after he filed his EEOC charge. And although it is the strongest piece of evidence Dickerson points to for his retaliation claim, it too is insufficient, considering the evidence demonstrating that it was Dickerson's work performance that was causally connected to his termination, as we discuss further in evaluating Dickerson's arguments under the indirect method of proof.

For a valid discrimination and retaliation claim under the ADA, an employee must show that he was meeting his employer's legitimate employment expectations, and that he was performing his job satisfactorily. *Lloyd*, 552 F.3d at 601. The record in this case demonstrates that as far back as 2005, Dickerson received warnings from his supervisors for failing to complete work assignments or secure equipment, and leaving his work site without obtaining his supervisor's permission. In 2007, before he complained of disability discrimination, at least one of his co-workers was warned that he should stay away from Dickerson if he wanted to be promoted to full-time employment. In the first formal written evaluation performed on Dickerson, he was rated as "Unsatisfactory" in three of seven categories. In the categories in which he was "Satisfactory," his direct supervisor, Deffenbaugh, said that Dickerson "is consistently late for work and needs to improve"; some "jobs need to be redone

because of not listening to the job instructions"; and Dickerson "does only the bare minimum to meet job requirements." In the categories in which Dickerson was "Unsatisfactory," Deffenbaugh stated that Dickerson "needs constant supervision or he will wander off jobs"; and that "[m]any times when Bobby is required to work with other staff members, they will request someone else to work with. He leaves the area and puts more burden on them." Overall, Dickerson's performance was rated as "Unsatisfactory": "Bobby takes no initiative to be a leader or a positive employee to try to meet job requirements . . . . Bobby is the type of employee that will take a lot of my time as a supervisor just to make sure he is still working." In the follow-up evaluation that Deffenbaugh performed approximately seven months later, he concluded that Dickerson, in spite of receiving "many" verbal reprimands to improve his work performance, remained an unsatisfactory employee. He noted that although Dickerson showed improvement in securing equipment, he still failed to tell his supervisor that he was going to leave a work site, and still shirked his work responsibilities to the detriment of his co-workers.

In response to this evidence demonstrating that Dickerson's work performance fell below District 522's legitimate employment expectations, Dickerson points to his affidavit where he declares that his work performance ranged from "at least good" to "Outstanding." However, Dickerson's own evaluation of his work cannot be imputed to District 522, and is insufficient to permit his case to survive past summary judgment. *Compare Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir.

2010) (uncorroborated testimony from non-movant at summary judgment stage can be evidence of disputed material facts if based on personal knowledge or firsthand experience), *with Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010) (mere conclusory statements are not evidence). And although Dickerson disagreed with his negative evaluations, that does not mean that the evaluations were the result of unlawful discrimination. *Brill v. Lante Corp.*, 119 F.3d 1266, 1273 (7th Cir. 1997) ("[T]he question is not whether the employer's performance ratings were *right* but whether the employer's description of its reasons is *honest*." (emphasis in original) (internal quotation marks and punctuation omitted)). Nor do the potentially inaccurate evaluations necessarily denote *disability* discrimination, which is evidenced through Dickerson's initial complaint to his union that the negative evaluations were a form of union activity discrimination.

"[P]erfection is not a requirement for protection" under the ADA. *Schandelmeier-Bartels v. Chicago Park Dist.*, 634 F.3d 372, 376 (7th Cir. 2011). But, in this case, to survive summary judgment under the indirect method of proof, Dickerson had to point to a genuine issue of material fact as to whether he was a satisfactory employee who was meeting District 522's legitimate employment issues. Because he did not do so, the district court was correct in granting summary judgment in favor of District 522.

### III. CONCLUSION

The district court's order granting summary judgment in favor of District 522 is AFFIRMED.

9-16-11