NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 23, 2013[*]
Decided January 24, 2013

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 12-1055

| | |
|---|---|
| SUNNY BUNTIN, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Southern District of Indiana, |
| | Indianapolis Division. |
| *v.* | |
| | No. 1:10-cv-0359-SEB-DKL |
| CITY OF INDIANAPOLIS, | |
| *Defendant-Appellee.* | Sarah Evans Barker, |
| | *Judge.* |

**O R D E R**

Sunny Buntin, an African-American woman, appeals the grant of summary judgment in favor of the City of Indianapolis, her former employer, in this suit claiming race and sex discrimination and retaliation under Title VII of the Civil Rights Act of 1964.

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

*See* 42 U.S.C. §§ 2000e2(a)(1), 2000e3(a). Because Buntin failed to make out a prima facie case of discrimination or retaliation, we affirm the judgment.

In 2008 Buntin applied to become a police officer with the Indianapolis Metropolitan Police Department. The department accepted her application and Buntin became a probationary officer. To become a permanent police officer, she was required to complete a field-training course. During this course, experienced members of the department—field-training officers or FTOs—supervised Buntin and daily graded her performance in several areas such as radio communication, problem solving, and patrol procedures. But Buntin received failing scores from her FTOs, never completed her course, and was assigned to remedial training. Buntin generally asserts, however, that one of her FTOs, Cathy Faulk, graded against her unfairly and distressed her by constantly referring to Hispanics as "license never received"—implying that Hispanics never qualify for driver's licenses—and to African Americans as "license suspended prior"—implying that African Americans have had their licenses suspended. After being placed in remedial training, Buntin filed a charge of discrimination with the Equal Employment Opportunity Commission alleging race and sex discrimination as well as retaliation. The Department fired her about a month later.

Buntin later commenced this suit claiming that the department discriminated against her based on race and sex, subjected her to a hostile work environment, and fired her in retaliation for filing her EEOC charge of discrimination. Specifically, Buntin claimed that Faulk's discriminatory grading resulted in her assignment to remedial training, and that Faulk created a hostile work environment through her disparaging remarks about Hispanics and African Americans and driver's licenses.

The district court granted summary judgment for the city, concluding that (1) Buntin could not establish a prima facie case of discrimination because she could not show that she was meeting the department's legitimate job expectations, (2) Faulk's use of the phrases "license never received" and "license suspended prior" was not sufficiently severe or pervasive to alter the conditions of Buntin's employment and create a hostile work environment, and (3) the timing of the department's decision to fire Buntin so soon after she filed her EEOC charge did not establish a causal connection between the two, as required for a claim of retaliation under the direct method of proof.

On appeal Buntin first challenges generally the district court's conclusion that she was not meeting the Department's legitimate job expectations, as required to establish a prima facie case of discrimination under the indirect method. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Lucas v. PyraMax Bank, FSB*, 539 F.3d 661, 666 (7th Cir. 2008). But as the district court noted, she cannot establish that she was meeting the department's legitimate job expectations because she admitted that, except for Faulk, all

her FTOs graded her fairly, and these FTOs all gave her failing scores in several "critical" areas upon which advancement was conditioned. *See Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 602–03 (7th Cir. 2011); *Lucas*, 539 F.3d at 666; *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 328–29 (7th Cir. 2002).

Buntin next argues that the district court should have concluded that her description of Faulk's comments about Hispanics and African Americans as being made "constantly" and "routinely" established that she was subjected to a hostile work environment. But when we review hostile work environment claims, the frequency of harassing conduct is only one of several factors we consider; we also take into account the conduct's severity. *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009); *Ezell v. Potter*, 400 F.3d 1041, 1047 (7th Cir. 2005). Faulk's descriptions of Hispanics and African Americans—even if expressed regularly—are not as serious or offensive as other racial epithets we have found actionable, *see, e.g., Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002), and were not directed at Buntin personally but made merely in her presence, *see Ezrell*, 400 F.3d at 1048; *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 552 (7th Cir. 2002); *Russell v. Bd. of Trs. of Univ. of Ill. at Chi.*, 243 F.3d 336, 343-44 (7th Cir. 2001).

With regard to her retaliation claim, Buntin seems to suggest that the district court overlooked a fact question concerning a series of departmental emails in which she was described as a "problem" officer who needed to be fired before she completed her field training. Buntin, however, does not explain why these emails provide any evidence of retaliation. The emails characterize her as a problem officer, not because of her complaints or filing of her EEOC charge, but because of her unacceptable job performance and refusal to participate productively in her training; these exchanges therefore do not suffice to establish the requisite casual connection. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 970–971 (7th Cir. 2012); *Fortier v. Ameritech Mobile Commc'ns, Inc.*, 161 F.3d 1106, 1114 (7th Cir. 1998).

AFFIRMED.