In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-3159

ERIC KOTY,

*Plaintiff-Appellant*,

*v.*

DUPAGE COUNTY, ILLINOIS,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division
No. 15-cv-02600 — **Virginia M. Kendall**, *Judge*.

ARGUED JUNE 1, 2018 — DECIDED AUGUST 16, 2018

Before RIPPLE, KANNE, and BRENNAN, *Circuit Judges*.

KANNE, *Circuit Judge*. Eric Koty, a deputy in the DuPage County Sheriff's Department, requested a different model of squad car. Notes from Koty's physician indicated Koty should be given a squad car with more legroom, "like an SUV," to accommodate a hip condition. The Department denied Koty's requests. Koty then submitted EEOC complaints alleging the Department had discriminated against him in violation of the Americans with Disabilities Act ("ADA").

Shortly thereafter, the Department reassigned Koty to courthouse duty, for which he would not need to drive a squad car. Koty then sued DuPage County alleging that the Department violated the ADA when it denied his request for an SUV and that the Department wrongfully retaliated against him for making the EEOC complaint. The district court found no such violations and granted summary judgment for the County. For the reasons that follow, we affirm.

## I.    BACKGROUND

Koty first requested an SUV in January 2014, and then against the next month. This second request was accompanied by a letter from Koty's physician stating that, "if available … a squad car with more legroom, like an SUV, would be preferable."(R. 58-7 at 2.) In response, employees of the Sheriff's Department measured the legroom in Koty's current squad car, a Crown Victoria, and in an SUV owned by the Department. The Department determined the SUV offered no additional legroom (though Koty contends the wrong measurements were considered) and denied Koty's requests.

On April 7, Koty submitted another letter from his physician that explained that "a squad car with more legroom, like an SUV, [was] necessary" to alleviate Koty's hip pain. (R. 58-6 at 2.) The letter further stated that Koty was otherwise entirely capable of fulfilling his job requirements. (*Id.*) The request and letter were accompanied by an EEOC complaint alleging discrimination under the ADA. The following day, the Department reassigned Koty to courthouse duty, which required no time in a squad car.

While on courthouse duty, Koty was temporarily taken off active special operations duty. During this time, he missed a

few training exercises, but no special operations missions. He was also asked to submit a plan for securing his weapons in his personal vehicle before returning to active duty.

Eventually, Koty had hip surgery. After the operation, he returned to courthouse duty. He applied for and was granted a transfer back to the law enforcement unit, where he was initially assigned to the midnight shift, then to his original daytime shift.

Koty sued, alleging the Department failed to provide reasonable accommodations pursuant to the ADA. He also alleged the Department retaliated against him for filing the EEOC complaint. The district court dismissed the accommodation claim after finding Koty did not qualify as "disabled" under the ADA. The district court then granted summary judgment for the county on Koty's retaliation claim, concluding the Department had taken no adverse employment actions against Koty.

## II.   ANALYSIS

Koty appeals the judgment of the district court as to both claims. We review *de novo* the district court's dismissal of a claim pursuant to FED. R. CIV. P. 12(b)(6) and the district court's grant of summary judgment. *Williams v. Seniff*, 342 F.3d 774, 781 (7th Cir. 2003).

   *A. The district court did not err when it dismissed Koty's accommodation claim.*

To bring a claim under the ADA, the plaintiff must allege that they are disabled. *Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013). The Act defines a "disability" as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual," "a record of such

an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). Koty's complaint states that he had a "femoral hip impingement with torn labrum among other medical disability" and that "[t]he pain is aggravated by [a]ssigned [v]ehicle," but contains no allegation that the injury affected any major life activity. (R. 1 at 2.)

While the inability to drive has been found in some cases to affect a major life activity, *see Winsley v. Cook County*, 563 F.3d 598, 604 (7th Cir. 2009), all Koty alleges here is that he is unable to drive one model of vehicle. This is not a disability as defined in the Act. Because Koty failed to allege he had a disability, the district court was correct to dismiss his accommodation claim.

B. *The district court did not err when it granted summary judgment in favor of the County on Koty's retaliation claim.*

Perhaps knowing that his accommodation claim was doomed, Koty has focused on appeal on the grant of summary judgment for the County on his retaliation claim. Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"Employers are forbidden from retaliating against employees who raise ADA claims regardless of whether the initial claims of discrimination are meritless." *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). To prove a retaliation claim, a plaintiff must prove "(1) he engaged in a statutorily protected activity; (2) he suffered an adverse action; and (3) a causal connection between the two." *Id.* If this initial burden is satisfied, "the burden then shifts to the defendant to present a non-invidious reason for

the adverse employment action." *Id.* at 602. "If the defendant meets this burden, the plaintiff must then demonstrate that the defendant's proffered reason was pretextual." *Id.* "[P]retext 'involves more than just faulty reasoning or mistaken judgment on the part of the employer; it is [a] lie, specifically a phony reason for some action.'" *Burton v. Bd. of Regents,* 851 F.3d 690, 698 (7th Cir. 2017) (quoting *Harden v. Marion Cty. Sheriff's Dept.,* 799 F.3d 857, 864 (7th Cir. 2015)).

Here, there is no dispute that submitting an EEOC charge is a statutorily protected activity. The parties do dispute, however, whether the actions taken were materially adverse or were mere pretext for retaliation. An action is materially adverse if "a reasonable employee … would be dissuaded from engaging in the protected activity." *Roney v. Ill. Dep't of Trans.,* 474 F.3d 455, 461 (7th Cir. 2007). What is considered adverse depends on the circumstances of each case, *Burlington Northern & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 69 (2006), but examples include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [and] significantly diminished material responsibilities." *Barton v. Zimmer, Inc.,* 662 F.3d 448, 456 (7th Cir. 2011) (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.,* 993 F.2d 132, 136 (7th Cir. 1993)). Koty alleges that several acts by the Department were taken to retaliate against him for filing the EEOC complaint, and that the Department's proffered reasons for taking these actions are mere pretext for discrimination.

First, Koty alleges the County retaliated against him when it transferred him from law enforcement to courthouse duty. Typically, lateral moves are not considered adverse employment actions. *See Stephans v. Erickson*, 569 F.3d 779, 790–91 (7th

Cir. 2009); *Washington v. Ill. Dept. of Revenue*, 420 F.3d 658, 661 (7th Cir. 2005). "Our decisions involving a transfer or reassignment of job responsibilities indicate that such an action is not materially adverse unless it represents a *significant* alteration to the employee's duties, which is often reflected by a corresponding change in work hours, compensation, or career prospects." *Stephans*, 569 F.3d at 791. Reassignments to less prestigious positions have also been considered adverse. *See e.g. Burlington Northern & Santa Fe Ry. Co.*, 548 U.S. at 71.

The transfer here did not result in a pay decrease, other than Koty's diminished opportunity for overtime pay. Koty did offer some evidence that courthouse duty is considered less prestigious—two officers testified that being assigned courthouse duty was considered punishment. However, Koty conceded he knew a transfer to courthouse duty was a potential way for the Department to accommodate his hip pain, an accommodation he requested. "It is the employer's prerogative to choose a reasonable accommodation," *Jay v. Internet Wagner, Inc.*, 233 F.3d 1014, 1017 (7th 2000), and the Department's decision to accommodate Koty's request in a way other than what he requested was not an adverse employment action. *See Hancock v. Potter*, 531 F.3d 474, 478–79 (7th Cir. 2008) (concluding actions taken by the employer to try to accommodate the employee's work restrictions were not adverse). Furthermore, Koty cannot show the Department's explanation that the transfer was made to accommodate his pain was pretext for retaliation. *See Serino v. Potter*, 178 Fed. Appx. 552, 556 (7th Cir. 2006) (concluding a transfer made to accommodate the employee's needs, even if considered adverse, was not discriminatory).

Second, Koty alleges the County retaliated against him when it temporarily removed him from active special operations duty. In a letter, the chief of the Department explained that Koty was placed on inactive status because he was transferred to courthouse duty. As a condition of his return to active status, Koty was required to submit a plan for safely storing his weapons in his personal vehicle while at the courthouse. Koty contends no one else was required to submit such a plan.

Like the district court, we fail to see how the temporary move to inactive status and requirement to submit a plan constitute an adverse employment action. Even as an active member, Koty only participated in special operations assignments occasionally. While on inactive status, his pay was not diminished and he missed only a few training exercises. Koty failed to present evidence that the temporary move to inactive status would cause him any career setbacks. Instead, all of the evidence in the record supports the County's explanation that the move to inactive status and plan requirement were logical effects of the reassignment to courthouse duty, not pretext for retaliation.

Third, Koty alleges the County retaliated against him when it required him to return to courthouse duty following his medical leave. But the County explained that Department policy requires all employees to return to the duty they were performing before they left when they return from leave. Koty offered no evidence that this explanation is pretextual.

Finally, Koty claims the County retaliated against him when it assigned him to the midnight shift after he requested and was granted a transfer back to law enforcement duty. Changing an employee's shift is generally not considered a

materially adverse employment action unless the change re-
sults in a change in pay or prestige or is particularly harmful
to that employee. *See Burlington Northern and Santa Fe Ry. Co.,*
548 U.S. at 69 (citing *Washington,* 420 F.3d at 662–63). While
the midnight shift may have been less desirable than Koty's
original daytime shift, he offered no evidence that the change
affected his pay or prestige or that there was some unique cir-
cumstance in his case.

In sum, Koty provided no evidence that any of these ac-
tions, taken alone or cumulatively, were the type that would
dissuade an employee from exercising his rights. And even if
one was convinced the County took some adverse action,
Koty could not show that the County's explanation—that all
these actions were the logical effects of accommodating
Koty's hip pain caused by driving his squad car—was pretext.
So, the district court did not err in granting summary judg-
ment for the County on this claim.

### III.    CONCLUSION

For these reasons, we AFFIRM the judgment of the district
court.